Affirmed by published opinion. Judge DEVER wrote the majority opinion, in which Judge KEENAN joined. Judge GREGORY wrote a dissenting opinion.
OPINION
DEVER, District Judge:
From 1860 to 1863, the federal budget grew dramatically due to spending associated with the Civil War. Sadly, some unscrupulous people viewed the growing federal budget as a font to be plundered. *247 Congress held hearings and learned that federal treasure had been spent on decrepit horses and mules, weapons that would not fire, rancid rations, and phantom supplies. In response, in 1863, Congress enacted the False Claims Act (“FCA”). When enacted, the Department of Justice did not exist, and federal law enforcement fell to Attorney General Edward Bates and his staff in Washington, D.C., as well as to the then-independent U.S. Attorneys in each federal judicial district. In enacting the FCA, Congress included qui tam provisions authorizing private citizens (known as qui tam relators) to use the FCA to file suit on behalf of the United States and to share in any recovery from the fraudsters.
Although the FCA proved a somewhat useful tool for returning ill-gotten gains to the United States Treasury, courts issued a number of rulings narrowing the construction of the FCA. Thus, in 1986, Congress amended the FCA in order to revise and strengthen it, particularly the FCA’s qui tam provisions. Since the 1986 Amendments, relators have filed a dramatically larger number of qui tam actions, and due in large measure to qui tam actions, the Department of Justice has used the FCA to return over $27 billion to the United States Treasury.
In this case, the American Civil Liberties Union (“ACLU”), OMB Watch, and Government Accountability Project (“GAP”) (collectively “appellants”) filed a complaint seeking declaratory and injunctive relief against the Attorney General of the United States and the Clerk of Court for the United States District Court of the Eastern District of Virginia (collectively “appellees”). Appellants make a facial constitutional challenge to the seal provisions in 31 U.S.C. § 3730(b)(2)-(3) of the FCA, alleging that the seal provisions violate the public’s First Amendment right of access to judicial proceedings, violate the First Amendment by gagging qui tam relators from speaking about their qui tam complaints, and infringe on a court’s inherent authority to decide on a case-by-case basis whether a particular qui tam complaint should be sealed and thereby violate the separation of powers. Congress added the FCA’s seal provisions in 1986, and the seal provisions require a qui tam relator to file the qui tam complaint under seal and mandate that the complaint remain sealed for 60 days. Accordingly, when a qui tam relator files a qui tam action, the Clerk of Court seals the qui tam complaint and the docket sheet reflecting the sealed complaint. During this 60-day period, the United States investigates the fraud allegations and decides whether to intervene in the action. At the end of the 60-day period, the United States either intervenes, declines to intervene, or seeks additional time from the federal court to investigate the allegations. If it intervenes or declines to intervene, the qui tam complaint and docket sheet are unsealed. If the United States needs more time to investigate the allegations to decide whether to intervene, the FCA permits the United States to demonstrate good cause in camera to a federal court for continuing the seal beyond 60 days.
The district court rejected appellants’ facial constitutional challenge to the FCA’s seal provisions and granted appellees’ motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because the FCA’s seal provisions do not violate the First Amendment or the separation of powers, we affirm.
I.
In 1863, Congress enacted legislation for the civil recovery of false claims. See Act of March 2, 1863, ch. 67, 12 Stat. 696 *248 (1863); S.Rep. No. 99-345, at 8-13 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5273-78. Congress targeted the law at contractors who fraudulently obtained money from the War Department during the Civil War. See United States v. McNinch, 356 U.S. 595, 599, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958). “Testimony before the Congress painted a sordid picture of how the United States had been billed for nonexistent or worthless goods, charged exorbitant prices for goods delivered, and generally robbed in purchasing the necessities of war. Congress wanted to stop this plundering of the public treasury.” Id. (footnotes omitted). Initially, the act included both criminal and civil penalties. See Act of March 2, 1863, ch. 67, 12 Stat. 696-98 §§ 1-3 (1863).
Congress eventually split the legislation concerning false claims into separate civil and criminal false claims statutes. See United States v. Bornstein, 423 U.S. 303, 305 n. 1, 96 S.Ct. 523, 46 L.Ed.2d 514 (1976). From its inception, the FCA contained provisions permitting a party known as a qui tam relator to bring suit in the name of the United States. See United States ex rel. Marcus v. Hess, 317 U.S. 537, 540, 63 S.Ct. 379, 87 L.Ed. 443 (1943).[1] If the qui tam relator prevailed in the suit, the qui tam relator recovered a portion of the proceeds. See id. Statutory qui tam provisions create a financial incentive for relators to protect the federal treasury from fraud. See id. As Judge Hall once wrote for this court: such provisions “let loose a posse of ad hoc deputies to uncover and prosecute frauds against the government” and thereby supplement the government’s “regular troops.” United States ex rel. Milam v. Univ. of Tex. M.D. Anderson Cancer Ctr., 961 F.2d 46, 49 (4th Cir.1992).
In 1986, following congressional hearings concerning fraud in government contracting, Congress enacted the False Claims Amendment Act of 1986 (“1986 Amendments”). See Mann v. Heckler & Koch Def., Inc., 630 F.3d 338, 342-43 (4th Cir.2010); Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784-86 (4th Cir.1999). The 1986 Amendments expanded the FCA’s scope, increased the penalties, lowered the requisite standard of knowledge and intent, revised the process for a qui tam relator to file suit, and expanded the number of qui tam relators permitted to sue. See United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co., 612 F.3d 724, 728-29, 734 (4th Cir.2010); United States ex rel. Sanders v. N. Am. Bus Indus., Inc., 546 F.3d 288, 292 (4th Cir.2008).
The FCA provides that any person who:
(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
(C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);
(D) has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property;
(E) is authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the receipt *249 without completely knowing that the information on the receipt is true;
(F) knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the Government, or a member of the Armed Forces, who lawfully may not sell or pledge property; or
(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,
violates the FCA. 31 U.S.C. § 3729(a)(1); United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 349 (4th Cir.2009). In order to recover under the FCA, the United States must prove by a preponderance of the evidence that the person knowingly violated the FCA. 31 U.S.C. § 3731(d). The FCA defines knowingly and expressly rejects that a person have a specific intent to defraud. Id. § 3729(b). A person who violates the FCA is liable to the United States for a civil penalty of not less than $5,000, but no more than $10,000 per false claim, regardless of whether the United States sustained damages. See id. § 3729(a)(1).[2] If the United States can prove that the false claim caused it damages, then it may recover between double and treble damages. See id. § 3729(a). Additionally, if it prevails, the United States may recover the costs of the civil action brought to recover any penalty or damages. See id.
In 1986, Congress also substantially revised the FCA’s qui tam provisions in order “to encourage more private enforcement suits.” S.Rep. No. 99-345, at 23-24 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5288-89. Under the qui tam provisions, Congress mandated that a relator file the qui tam complaint under seal in a federal district court. See 31 U.S.C. § 3730(b). Specifically, 31 U.S.C. § 3730(b)(2)-(3) states:
(2) A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4[ (i) ][3] of the Federal Rules of Civil Procedure. The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.
(3) The Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal under paragraph (2). Any such motions may be supported by affidavits or other submissions in camera. The defendant shall not be required to respond to any complaint filed under this section until 20 days after the complaint is unsealed and served upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure.
Id. § 3730(b)(2)-(3). A qui tam relator must file the complaint under seal and the complaint must remain sealed for at least 60 days. Id. § 3730(b)(2). This initial seal provision and 60-day period are mandatory. See id. Congress adopted the 60-day *250 period for numerous reasons: (1) to permit the United States to determine whether it already was investigating the fraud allegations (either criminally or civilly); (2) to permit the United States to investigate the allegations to decide whether to intervene; (3) to prevent an alleged fraudster from being tipped off about an investigation; and, (4) to protect the reputation of a defendant in that the defendant is named in a fraud action brought in the name of the United States, but the United States has not yet decided whether to intervene. See S.Rep. No. 99-345, at 24-25 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5289-90; Under Seal v. Under Seal, 326 F.3d 479, 486 (4th Cir.2003); United States ex rel. Pilon v. Martin Marietta Corp., 60 F.3d 995, 998-99 (2d Cir.1995).
Sometimes the United States is aware of the alleged fraud described in a qui tam complaint. Sometimes it is not. Either way, upon receiving a qui tam complaint, the Department of Justice’s investigation usually requires Department of Justice personnel to consult with investigators within the Department of Justice and personnel within the federal agency that is the alleged fraud victim. The seal provisions provide time for such consultation and investigation so that the United States may make an informed decision about whether to intervene in the qui tam action. The seal provisions also allow the government an opportunity to determine whether the qui tam action implicates any ongoing civil or criminal fraud investigations and to determine whether to request a stay of the action pursuant to 31 U.S.C. § 3730(c)(4). See S.Rep. No. 99-345, at 24 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5289. Because Congress recognized that some investigations might require more than 60 days, the 1986 Amendments permit the United States, “for good cause shown,” to file a motion in camera with affidavits or other submissions to extend the seal. See 31 U.S.C. § 3730(b)(3). The United States must file such a motion before the 60-day period expires. Id. At that point, a federal court must review the motion and determine whether to extend the seal. See id. If the court decides to extend the seal, the qui tam complaint, the docket sheet, the government’s in camera submission, and the order extending the seal all remain sealed. See generally United States ex rel. Siller v. Becton Dickinson & Co., 21 F.3d 1339, 1341-42, 1345-46 (4th Cir.1994). If the court declines to extend the seal, the above-referenced items are unsealed. See, e.g., Under Seal, 326 F.3d at 486; United States ex rel. Doe v. X Corp., 862 F.Supp. 1502, 1510-11 (E.D.Va.1994).
At the conclusion of its investigation, the United States decides whether to intervene in the qui tam action. If the United States intervenes, it notifies the court and the qui tam relator, and the United States takes over the litigation. Following intervention, the complaint is unsealed, the docket is unsealed, and the United States serves the complaint on the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure. At that point, the United States may amend the complaint, move to dismiss the action or certain claims, seek to settle the action, pursue the claims through alternative remedies, or litigate the action. See 31 U.S.C. §§ 3730(b)(1), 3730(c)(2)(A) (discussing dismissal); id. § 3730(c)(2)(B) (discussing settlement); id. § 3730(c)(5) (discussing alternative administrative false claims remedies).
If the United States intervenes, the qui tam relator remains a party to the action. See id. § 3730(c)(1). Thus, the qui tam relator may participate in discovery, engage in motions practice, and participate at trial. The United States may seek to curb a qui tam relator’s participation if such participation is repetitious, irrelevant, or harassing. See id. § 3730(c)(2)(C). *251 Likewise, the United States may seek to curb civil discovery in a qui tam action if such discovery will interfere with ongoing civil or criminal investigation arising from the same facts. Id. § 3730(c)(4). Moreover, a defendant may seek to limit a qui tam relator’s participation in the litigation. See id. § 3730(c)(2)(D).
If the United States intervenes and recovers any proceeds under the FCA, the relator receives at least 15 percent but not more than 25 percent of the proceeds. See id. § 3730(d)(1). Additionally, the relator may recover its reasonable expenses, attorney’s fees, and costs. See id.
The process and potential recovery are different if the United States declines to intervene. If the United States declines to intervene, it notifies the court and the qui tam relator. The complaint is then unsealed, the docket is unsealed, and the qui tam relator serves the complaint on the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure. The qui tam relator then litigates the case against the defendant. The United States may, however, continue to receive all pleadings and seek to intervene at a later date for good cause. See id. § 3730(c)(3). Furthermore, the United States may seek to curb civil discovery for a period of up to 60 days upon a showing that such discovery would interfere with its investigation or prosecution of a civil or criminal matter arising from the same facts. Id. § 3730(c)(4).
If the United States declines to intervene and the qui tam relator recovers proceeds under the FCA, the qui tam relator’s proceeds are larger than in a case where the United States intervened. Specifically, if the relator litigates alone and recovers proceeds under the FCA, the relator’s share must be at least 25 percent, but no more than 30 percent of the proceeds, plus reasonable expenses, attorney’s fees, and costs. See id. § 3730(d)(2).[4]
II.
Appellants contend the seal provisions of 31 U.S.C. § 3730(b)(2)-(3) facially violate the First Amendment and the Constitution’s separation of powers. Specifically, appellants contend that the seal provisions violate the public’s First Amendment right of access to judicial proceedings, violate the First Amendment by gagging qui tam relators from speaking about their qui tam complaints, and infringe on a court’s inherent power to determine on an individualized basis whether a qui tam complaint should be sealed and thereby violate the separation of powers. ACLU v. Holder, 652 F.Supp.2d 654, 659 (E.D.Va.2009). The district court disagreed and dismissed their complaint. Id. at 671. Our review is de novo. See, e.g., Robinson v. Am. Honda Motor Co., 551 F.3d 218, 222 (4th Cir.2009); Sucampo Pharm., Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 550 (4th Cir.2006).
*252 A.
Initially, the parties dispute whether the First Amendment provides a right of access to a qui tam complaint and docket sheet sealed in accordance with 31 U.S.C. § 3730(b)(2)-(3).[5] We recognize that the First Amendment provides a right of access to criminal trials and certain criminal proceedings. See, e.g., Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 10-14, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986); Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 505-10, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984); Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 603-06, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 575-80, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980); In re Washington Post Co., 807 F.2d 383, 388-90 (4th Cir.1986); see also In re State-Record Co., 917 F.2d 124, 127-29 (4th Cir.1990); Baltimore Sun Co. v. Goetz, 886 F.2d 60, 64-65 (4th Cir.1989).[6] Although the First Amendment guarantees a right of access to criminal trials and certain criminal proceedings, that right of access is not absolute. See, e.g., Globe Newspaper Co., 457 U.S. at 606, 102 S.Ct. 2613. Thus, a state may deny access to a portion of a criminal trial if it demonstrates that denial of access is necessitated by a compelling government interest and is narrowly tailored to serve that interest. Id. at 606-07, 102 S.Ct. 2613. We also recognize that the Supreme Court has not addressed whether the First Amendment’s right of access extends to civil trials or other aspects of civil cases. See, e.g., Huminski v. Corsones, 386 F.3d 116, 145 n. 30 (2d Cir.2004); Detroit Free Press v. Ashcroft, 303 F.3d 681, 695 n. 11 (6th Cir.2002). However, most circuit courts, including the Fourth Circuit, have recognized that the First Amendment right of access extends to civil trials and some civil filings. See, e.g., Va. Dep’t of State Police v. Washington Post, 386 F.3d 567, 575-78 (4th Cir.2004); Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 91-92 (2d Cir.2004); Stone v. Univ. of Md. Med. Sys. Corp., 948 F.2d 128, 130-31 (4th Cir.1991); Stone, 855 F.2d at 180-81; Rushford v. New Yorker Magazine Inc., 846 F.2d 249, 253 (4th Cir.1988).
Here, we need not and do not resolve whether the First Amendment right of access extends to a qui tam complaint and docket sheet sealed in accordance with 31 U.S.C. § 3730(b)(2)-(3). Cf. Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 821, 172 L.Ed.2d 565 (2009) (noting that lower federal courts should not “pass on questions of constitutionality ... unless such adjudication is unavoidable” (alteration in original) (quotation omitted)). Instead, we assume without deciding that the First Amendment right of access extends to a qui tam complaint and docket sheet sealed in accordance with 31 U.S.C. § 3730(b)(2)-(3). Even with this assumption, access is still not guaranteed. See, e.g., Globe Newspaper Co., 457 U.S. at 606-07, 102 S.Ct. 2613; Stone, 855 F.2d at 180; Rushford, 846 F.2d at 253; In re Washington *253 Post Co., 807 F.2d at 390. Specifically, if the United States can show a compelling interest and the denial of access is narrowly tailored to serve that compelling interest, denial of access in accordance with 31 U.S.C. § 3730(b)(2)-(3) comports with the First Amendment. See, e.g., Globe Newspaper Co., 457 U.S. at 606-07, 102 S.Ct. 2613; Stone, 855 F.2d at 180.
The United States has a compelling interest in protecting the integrity of ongoing fraud investigations. See, e.g., Va. Dep’t of State Police, 386 F.3d at 579. Congress added the seal provisions in the FCA for numerous reasons, including to preserve the integrity of such fraud investigations. See S.Rep. No. 99-345, at 24 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5289; Pilon, 60 F.3d at 998-99. Thus, we turn to whether the seal provisions are narrowly tailored to serve that compelling government interest.
The FCA’s seal provisions are narrowly tailored in three important ways. First, in attempting to balance the government’s investigatory needs against the need for public access to court documents, Congress crafted a detailed process for initiating and pursuing a qui tam complaint under the FCA, including a narrow window of time (i.e., 60 days) in which the seal provisions are mandatory. In doing so, Congress accounted for the complex nature of modern fraud investigations, the government’s limited resources, and the unique nature of a qui tam action under the FCA. As for the unique nature of qui tam actions, the Supreme Court explained most recently in Vermont Agency that qui tam statutes have a long historical pedigree, but are unique in effecting a partial assignment of a damages claim of the United States to the relator. See Vt. Agency of Natural Res., 529 U.S. at 774-76, 120 S.Ct. 1858. Such qui tam statutes implicate the appointments clause in Article II, § 2 and the “take care” clause in Article II, § 3. See id. at 775-78 & n. 8, 120 S.Ct. 1858; cf. Riley v. St. Luke’s Episcopal Hosp., 252 F.3d 749, 752-58 (5th Cir.2001) (en banc) (describing FCA’s intrusion on Executive’s Article II powers as “modest,” but upholding constitutionality based on the FCA’s control mechanisms); United States ex rel. Berge v. Bd. of Trs. of Univ. of Ala., 104 F.3d 1453, 1457-59 (4th Cir.1997) (holding government’s declination to intervene does not extinguish its interest in the FCA action; in fact its interest remains strong enough to abrogate a state’s Eleventh Amendment immunity); United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co., 41 F.3d 1032, 1041 (6th Cir.1994) (relying on FCA’s control mechanisms in upholding FCA against “take care” and appointments clause challenges); United States ex rel. Kelly v. Boeing Co., 9 F.3d 743, 758 (9th Cir.1993) (same). After all, in a typical civil action that the Department of Justice files on behalf of the United States, the Department of Justice investigates whether to file suit before the suit is filed. Such a pre-suit investigation is particularly critical before alleging fraud. See Fed. R.Civ.P. 9(b), 11. However, in a qui tam action under the FCA, a person unconnected to the Executive files a qui tam suit under the FCA on behalf of the United States. Moreover, the qui tam relator files such a suit with no notice or warning to the Executive, and the Executive may already be conducting a civil or criminal fraud investigation.
Not surprisingly, Congress crafted the FCA in 1986 to address the complexity of modern fraud investigations, the government’s limited resources, and the unique nature of a qui tam action under the FCA. As discussed, a qui tam relator must file the qui tam complaint under seal. See 31 U.S.C. § 3730(b). The qui tam relator serves the sealed complaint and a state *254 ment of material evidence detailing the alleged FCA violations on the United States pursuant to Rule 4(i) of the Federal Rules of Civil Procedure. See id. § 3730(b)(2); Fed.R.Civ.P. 4(i). Because the qui tam complaint is filed under seal and is (by definition) the first entry on the docket sheet, the Clerk of Court seals the docket sheet. The act of sealing the docket sheet is ministerial. Both the qui tam complaint and the docket sheet remain sealed for 60 days. See 31 U.S.C. § 3730(b). There are no hearings (public or otherwise) during this 60-day period. Rather, the United States has the opportunity to investigate the allegations in order to decide whether to intervene.
Second, the seal provisions mandate judicial review at the end of the 60-day period. Specifically, at the end of the 60-day period, if the United States wishes to extend the seal, it must demonstrate “good cause” to a federal court for extending the seal. Of course, the “good cause” standard in section 3730(b)(3) is the same standard contained in Rule 26 of the Federal Rules of Civil Procedure, which permits a federal court to require that certain matters be sealed. See Fed.R.Civ.P. 26(c); Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36-37, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) (noting that “good cause” standard under the Federal Rules of Civil Procedure does not require heightened First Amendment scrutiny).
Third, the seal provisions limit the relator only from publicly discussing the filing of the qui tam complaint. Nothing in the FCA prevents the qui tam relator from disclosing the existence of the fraud. Therefore, even if there is a First Amendment right of access to a qui tam complaint and docket sheet sealed in accordance with 31 U.S.C. § 3730(b)(2)-(3), the FCA’s seal provisions are narrowly tailored to serve a compelling government interest.
In opposition to this conclusion, appellants argue that the FCA should have been drafted to require that every qui tam relator publicly file every qui tam action, unless the court makes an individualized determination that the complaint should be filed under seal. See Appellants’ Br. at 39. Under this, alternative process, appellants recognize that at least some qui tam complaints would warrant being filed under seal just as some non-FCA complaints are filed under seal. See id. In making this argument, appellants fail to meet the rigorous requirements necessary to win a facial First Amendment challenge to 31 U.S.C. § 3730(b)(2)-(3). See, e.g., Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 450-51, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008); United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); Richmond Med. Ctr. for Women v. Herring, 570 F.3d 165, 173-74 (4th Cir.2009) (en banc); WV Ass’n of Club Owners and Fraternal Servs., Inc. v. Musgrave, 553 F.3d 292, 294 (4th Cir.2009).[7]
In sum, even assuming that the First Amendment right of access extends to a qui tam complaint and docket sheet sealed in accordance with 31 U.S.C. § 3730(b)(2)-(3), appellants’ facial challenge still fails. Accordingly, we affirm the district court’s judgment dismissing that claim under Rule 12(b)(6).
B.
Next we analyze appellants’ claim that the FCA’s seal provisions violate the *255 First Amendment by gagging qui tam relators from speaking about the qui tam complaint. In making this claim, appellants concede that they are not relators, but assert that they are “willing listeners” to relators who would like to discuss their qui tam complaints. After considering this claim and the record, the district court concluded that appellants lacked standing to challenge the alleged speech-restricting effect that 31 U.S.C. § 3730(b)(2)-(3) has on relators’ ability to disclose the existence of the sealed qui tam complaint. See ACLU, 652 F.Supp.2d at 668-69.
In making this First Amendment argument, appellants rely on a standing doctrine unique to the First Amendment, which provides standing to persons who are “willing listeners” to a willing speaker who, but for the restriction, would convey information. See, e.g., Stephens v. County of Albemarle, 524 F.3d 485, 491 (4th Cir.2008). The “willing speakers,” according to the appellants, are relators who otherwise would discuss their qui tam complaints with appellants but for 31 U.S.C. § 3730(b)(2)-(3).
In Stephens, we analyzed whether a plaintiff had standing to assert such a right to receive speech. Id. at 492. There, plaintiff Patricia Stephens alleged that, but for a sealed settlement agreement, she and her deceased husband would have been informed about dangerous conditions existing at his workplace. Id. at 486. Although we found that Mrs. Stephens was a willing listener and found that two willing speakers existed, we still held Mrs. Stephens lacked standing. Id. at 492-93. In doing so, we held that Mrs. Stephens had to show a direct connection between an identifiable willing speaker and herself as a willing listener. Id. Mrs. Stephens could have shown this direct connection with evidence that the identified willing speakers would have spoken to her in the past but for the speech restriction or would speak with her in the future but for the speech restriction. Id. Because Mrs. Stephens failed to show “that there exists a speaker willing to convey the information to her,” she lacked standing. Id.
Here, appellants have failed to identify any particular qui tam relator who, but for the seal provisions in 31 U.S.C. § 3730(b)(2)-(3), is a willing speaker who desires to speak with appellants. Thus, as in Stephens, appellants have failed to show a direct connection between an identifiable willing speaker and the appellants. See id. at 492-93; see also Bond v. Utreras, 585 F.3d 1061, 1078 (7th Cir.2009) (collecting cases). Therefore, appellants lack standing to raise this claim. Accordingly, we affirm the district court’s judgment dismissing that claim under Rule 12(b)(1).
C.
Appellants claim that the FCA’s seal provisions violate the Constitution’s separation of powers. Specifically, appellants claim that 31 U.S.C. § 3730(b)(2)-(3) infringes on the inherent power of the lower federal courts by mandating that qui tam relators file FCA complaints under seal, without an opportunity for individual judicial assessment of the need to seal the complaint or the docket sheet.
Congress may not disrupt the balance among the branches of government by preventing another branch from accomplishing its constitutional function. See, e.g., Clinton v. Jones, 520 U.S. 681, 699-700, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997); Morrison v. Olson, 487 U.S. 654, 696, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988); Nixon v. Adm’r of Gen. Servs., 433 U.S. 425, 442-43, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977). Appellants’ argument focuses on the inherent power of lower federal courts. The inherent power of the lower federal courts falls into three main catego *256 ríes, none of which are absolute. See, e.g., In re Stone, 986 F.2d 898, 901-02 (5th Cir.1993); Eash v. Riggins Trucking Inc., 757 F.2d 557, 562-64 (3d Cir.1985) (en banc); United States v. Brainer, 691 F.2d 691, 695-96 (4th Cir.1982). The first category of inherent powers is the core Article III power. This power is generally described as the ability of a lower federal court to decide a case over which it has jurisdiction. See, e.g., United States v. Klein, 80 U.S. (13 Wall.) 128, 146-47, 20 L.Ed. 519 (1871); Brainer, 691 F.2d at 695. Essentially, once Congress has established lower federal courts and provided jurisdiction over a given case, Congress may not interfere with such courts by dictating the result in a particular case. See, e.g., Brainer, 691 F.2d at 695. The second category of inherent powers consists of those powers “necessary to the exercise of all others.” In re Stone, 986 F.2d at 902 (quotation omitted). “For the most part, these powers are deemed necessary to protect the efficient and orderly administration of justice and those necessary to command respect for the court’s orders, judgments, procedures, and authority.” See id. These powers are subject to congressional regulation. See Brainer, 691 F.2d at 695-97 (noting power of federal courts to make procedural rules in the absence of congressional directive and describing the contempt power as an example). The third category of inherent powers “includes those reasonably useful to achieve justice.” In re Stone, 986 F.2d at 902. Examples of such powers include “the power of a district court to appoint an auditor to aid in litigation involving a complex commercial matter.” Id. Such powers are subject to congressional regulation. Id.
The power at issue in this case — whether to seal a complaint or a docket sheet for 60 days — appears to fit into the third category of powers. At most, it reaches the second category. In either event, 31 U.S.C. § 3730(b)(2)-(3) does not violate the separation of powers under the Constitution. See Brainer, 691 F.2d at 698-99 (rejecting facial and as applied separation-of-powers challenge to Speedy Trial Act). As in Brainer, the FCA’s seal provisions are a proper subject of congressional legislation and do not intrude on “the zone of judicial self-administration to such a degree as to prevent the judiciary from accomplishing its constitutionally assigned functions.” Id. at 698 (quotation omitted). Accordingly, we affirm the district court’s judgment dismissing that claim under Rule 12(b)(6).
D.
Finally, we respectfully offer a few thoughts in response to the dissenting opinion. First, the dissent describes Congress’s decision to add the FCA’s seal provisions in 1986 as “rather puzzling,” Post at 25, but the legislative history explains why Congress added the seal provisions. See S.Rep. No. 99-345, at 24-25 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5289-90. Next, the dissent claims that the FCA’s seal provisions “effectively prohibit[] public discussion of an entire topic.” Post at 27 (quotations and citation omitted). The FCA’s seal provisions, however, only preclude a qui tam relator who wants to use the FCA to recover money from discussing the FCA complaint for a brief period of time. Given that Congress created the FCA’s qui tam right to bring suit in the name of the United States, Congress certainly could add conditions to safeguard the interests of the United States. Moreover, as we have explained, the FCA does not bar the qui tam relator from discussing the underlying fraud.
Third, the dissent claims that invalidating the FCA’s seal provisions will bolster *257 the role of relators and help to prevent under-enforcement of the FCA. See Post at 28-29. However, Congress has chosen a different balance among relators, the United States, and those subject to FCA actions.
Fourth, the dissent contends that protecting on-going fraud investigations is not compelling. Post at 29-30. However, in Virginia Department of State Police, we stated “our complete agreement with the general principle that a compelling governmental interest exists in protecting the integrity of an ongoing law enforcement investigation.” 386 F.3d at 579. The dissent also claims we must make an “individualized assessment” of the government’s claimed compelling interest. Post at 29. However, such an assessment is impossible until an as-applied challenge is properly before us.
Next, the dissent suggests that the FCA’s seal provisions are not narrowly tailored because some federal courts in some FCA cases grant government motions to extend the FCA’s seal after applying the “good cause” standard in 31 U.S.C. § 3730(b)(3). See Post at 31. As a result, the seal is sometimes extended beyond the 60-day period. See id. The “good cause” standard, however, comports with the First Amendment. See Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36-37, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). Moreover, Congress intended courts to apply that standard and to “weigh carefully” any such extension beyond the 60-day period. See S.Rep. No. 99-345, at 24-25 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5289-90. To the extent the dissent is troubled by how often federal courts grant government motions to extend the seal beyond the 60-day period or how long federal courts have extended the seal in certain cases, the dissent’s real complaint arises from each federal court’s independent decision to extend the seal. However, before a federal court extends the seal in accordance with the FCA’s statutory scheme, the federal court has reviewed the record and the motion and applied the “good cause” standard. Notably, in camera proceedings are very common in the federal judiciary. In re N.Y. Times Co. to Unseal Wiretap & Search Warrant Materials, 577 F.3d 401, 410 n. 4 (2d Cir.2009). Such proceedings include grand jury proceedings, certain proceedings involving national security, trade secrets, state secrets, or personal safety, certain proceedings involving minors, and the process of applying for a search warrant. See id.; see, e.g., In re Grand Jury, 478 F.3d 581, 584-88 (4th Cir.2007); Sterling v. Tenet, 416 F.3d 338, 342-49 (4th Cir.2005); James v. Jacobson, 6 F.3d 233, 238-42 (4th Cir.1993); In re Application & Affidavit for a Search Warrant, 923 F.2d 324, 328-31 (4th Cir.1991). Similarly, courts sometimes receive and review “other forms of sensitive information in camera and ex parte.” In re N.Y. Times Co., 577 F.3d at 410 n. 4. In these situations, just as when applying the FCA’s “good cause” standard, “the courts seek to balance the need for transparency in the judiciary with the effective protection of sensitive information.” Id.
Ultimately, the dissent cites “sunlight” and “openness” as reasons for invalidating Congress’s policy preference in the FCA’s seal provisions. We agree that “sunlight” and “openness” are important values that further the functioning of this republic and note that in every FCA case, the qui tam complaint will be unsealed. Thus, in every FCA case, the people will be able to see how the Executive and the Judiciary have fulfilled their constitutional and statutory roles. Concomitantly, we recognize the United States Code includes a myriad of statutes where Congress has mandated the sealing of certain sensitive information *258 filed with a court.[8] Although “opacity” may very well “deteriorare] the quality of our democracy,” Post at 32, Congress has determined temporary confidentiality can assist the functioning of certain processes, including certain processes involving the Executive and Judiciary. Congress made one such constitutionally permissible choice in adding the seal provisions to the FCA, and we respectfully disagree that the dissent’s assessment of “openness” and “sunlight” should trump Congress’s assessment.
III.
As explained above, the judgment of the district court is affirmed.

AFFIRMED

. "Qui tam" is short for "qui tam pro domino rege quam pro se ipso in hac parte sequitor,” which means "who pursues this action on our Lord the King's behalf as well as his own.” Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 768 n. 1, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000); see Hess, 317 U.S. at 541 n. 4, 63 S.Ct. 379.

. Cf. Civil Monetary Penalties Inflation Adjustment, 64 Fed.Reg. 47099 (Aug. 30, 1999); 28 C.F.R. § 85.3(9) (2010).

. The 1993 Amendments to the Federal Rules of Civil Procedure moved former Rule 4(d)(4) to current Rule 4(i). Compare Fed.R.Civ.P. 4(d)(4) (1992) with Fed.R.Civ.P. 4(i) (2010).

. To say that the 1986 Amendments strengthened the FCA and its qui tam provisions would be an understatement. According to the Department of Justice, it used the FCA to recover more than $3 billion in fiscal year 2010. See Dep't of Justice, False Claims Act Statistics, 2 (Nov. 23, 2010), http://www. justice.gov/civil/frauds/fcastats.pdf. Moreover, between 1986 and 2010, the Department of Justice used the FCA to recover more than $27 billion. See id. at 1-2. Qui tam relators have filed 63% of FCA cases since 1987. See id. Most strikingly, qui tam actions accounted for only 8% of FCA matters in 1987, but accounted for 80% of FCA matters in 2010. See id.
In 2009, Congress again amended the FCA. See Fraud Enforcement and Recovery Act of 2009, Pub.L. No. 111-21, sec. 4, 123 Stat. 1617, 1621-25. The 2009 amendments to the FCA sire not material to this appeal.

. Appellants abandoned any argument that the common law provides a right to access by failing to properly raise the issue in their opening brief. See United States v. Brooks, 524 F.3d 549, 556 n. 11 (4th Cir.2008); Edwards v. City of Goldsboro, 178 F.3d 231, 241 n. 6 (4th Cir.1999). Thus, we do not address any issues associated with the common-law right of access. Cf. Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir.1988).

. Public access to a criminal trial also raises issues under the public trial clause of the Sixth Amendment. See, e.g., Presley v. Georgia, - U.S. -, 130 S.Ct. 721, 723-25, 175 L.Ed.2d 675 (2010) (per curiam); Waller v. Georgia, 467 U.S. 39, 44-50, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). In challenging the FCA’s seal provisions, appellants do not rely on the Sixth Amendment.

. Appellants admit that this is not an over-breadth First Amendment claim. See Appellants' Reply Br. at 5; cf. United States v. Stevens, 130 S.Ct. 1577, 1587-88 & n. 3, 176 L.Ed.2d 435 (2010) (describing standard applied to an overbreadth First Amendment claim).

. See, e.g., Fed.R.Civ.P. 5.2; Fed.R.Crim.P. 49.1 (mandating sealing as to certain personal, private identifications such as individual social-security numbers) (adopted in compliance with the E-Government Act of 2002, Pub.L. No. 107-347, § 205, 116 Stat. 2899, 2913-15); 8 U.S.C. § 1535(a) (mandating seal and ex parte hearing of appeals concerning denial of application for removal of an alien suspected of terrorism); 12 U.S.C. § 3410(b) (providing for in camera response of government to a customer motion to quash a bank record subpoena); 15 U.S.C. § 1116(d)(8) (mandating the sealing of a court order — and all supporting documents — directing seizure of counterfeit goods until subject of order “has an opportunity to contest” the order); 18 U.S.C. § 3333(c)(1) (mandating the sealing of a Special Grand Jury's report for 31 days following service on public officers named therein); 18 U.S.C. § 3509(d)(2) (mandating sealing of child victim's or witness’s names and "other information” concerning the child); 28 U.S.C. § 1610(f)(2)(B)(i) (allowing Secretaries of State and Treasury discretion to provide information to court under seal in executing on assets of foreign states); 31 U.S.C. § 5318A(f) (allowing ex parte and in camera submission of evidentiary support for Secretary of Treasury's designation of a "primary money laundering concern”); 42 U.S.C. § 10608(c) (mandating sealing of any tapes created by closed-circuit broadcast of court proceedings for victims of crime); 42 U.S.C. § 14011(b)(6) (mandating the sealing of court proceedings pertaining to and the results of sexually transmitted disease testing of sexual-assault defendants and prohibiting disclosure beyond limited parties). We need not and do not address whether these statutes comport with the First Amendment.