**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-1406**

BRIAN K. SMITH,

             Plaintiff – Appellant,

        and

UNITED STATES OF AMERICA ex rel. BRIAN K. SMITH,

             Plaintiff,

        v.

CLARK/SMOOT/RUSSELL, a Joint Venture; CLARK CONSTRUCTION GROUP, LLC; SMOOT CONSTRUCTION COMPANY OF WASHINGTON, D.C.; H.J. RUSSELL AND COMPANY, INC., a/k/a H.J. Russell and Company; SHIRLEY CONTRACTING COMPANY, LLC; SHIRLEY CONTRACTING COMPANY, LLC, d/b/a Metro Earthworks; SHELTON FEDERAL GROUP, LLC; SHELTON/METRO, a Joint Venture; HSU DEVELOPMENT, INC.; HSU DEVELOPMENT, INC., d/b/a HSU Builders,

             Defendants – Appellees.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Roger W. Titus, Senior District Judge. (8:13-cv-00009-RWT)

Argued: March 24, 2015              Decided: August 10, 2015

Before WYNN, FLOYD, and HARRIS, Circuit Judges.

Affirmed in part, reversed in part, vacated in part, and remanded for further proceedings by published opinion. Judge Wynn wrote the opinion, in which Judge Floyd and Judge Harris concurred.

———————————

**ARGUED**: Jerry Alfonso Miles, II, DEALE SERVICES, LLC, Rockville, Maryland, for Appellant. Randall A. Brater, ARENT FOX LLP, Washington, D.C., for Appellees. **ON BRIEF**: William W. Goodrich, Patrick R. Quigley, Karen S. Vladeck, ARENT FOX LLP, Washington, D.C., for Appellees.

———————————

WYNN, Circuit Judge

To bring an action under the False Claims Act, a relator must, among other things, file his complaint under seal and maintain that seal for a period of sixty days. Although the False Claims Act complaint in this matter was properly filed under seal, the relator's attorney revealed to the relator's employer the existence of the complaint well before the end of the sixty day waiting period. Finding a violation of the seal requirement, the district court dismissed the relator's action with prejudice.

On appeal, we conclude that the dismissal of Smith's case with prejudice was inappropriate under the False Claims Act because the seal violation did not incurably frustrate the seal's statutory purpose. Furthermore, neither of the district court's alternative reasons for dismissing Smith's claims—the doctrine of primary jurisdiction and failure to comply with Civil Procedure Rule 9(b)—warrant dismissal with prejudice. We also conclude that the district court erred when it dismissed Smith's retaliation claim. Accordingly, we reverse the dismissals and remand for further proceedings.

I.

A.

3

Relator Brian K. Smith worked on several federal construction projects in 2012 and 2013: the City Market on O Street project ("City Market"), the Smithsonian Institution's National Museum of African-American History and Culture ("African-American Museum"), and the Smithsonian National Zoo project ("National Zoo"). Due to their size, these projects were subject to the Davis-Bacon Act, 40 U.SC. §§ 3141–3144, 3146, 3147.

The Davis-Bacon Act requires contractors and subcontractors performing federally funded or assisted contracts of more than $2,000 to set forth stipulations in covered contracts agreeing to pay their workers no less than the locally prevailing wages.[1] Id. § 3142. The Secretary of Labor sets the prevailing wages, which fall under four wage schedules (Building, Residential, Highway, and Heavy) and several different labor categories (painter, plumber, laborer, bricklayer, etc.). Id. When a dispute arises regarding the proper classification of a particular type of work, the Department of Labor makes a determination of the prevailing wage. 29 C.F.R. § 5.11(a).

In this matter, the complaint named several defendants. However, only Defendants Shirley Contracting Co., LLC, which

_____

[1] For purposes of the Davis-Bacon Act (and this opinion), the term "wages" includes the basic hourly rates of pay, overtime, fringe benefits, and other forms of compensation.

4

does business as Metro Earthworks ("Shirley/Metro"), and Clark Construction Group, LLC ("Clark") (collectively, "Defendants") are properly before us because Smith did not raise the dismissal of the other defendants on appeal. See, e.g., United States v. Al–Hamdi, 356 F.3d 564, 571 n.8 (4th Cir. 2004).

Defendants are construction companies that performed construction work on one or more of the projects. Shirley/Metro, a subsidiary of Clark, employed Smith. Smith believed that Defendants failed to pay him the required Davis-Bacon Act wages for the work he performed on the City Market, African-American Museum, and National Zoo projects.

B.

On the City Market project, Smith was employed from April through late-August 2012 as a bobcat operator, flagman, jackhammer operator, roller, and unskilled general laborer. He alleges that his City Market wages should have been paid under the Heavy wage schedule but Defendants misclassified his work under a lower-paying schedule. He also alleges Defendants' outright failure to pay certain fringe benefits due, regardless of the applicable schedule.

On the African-American Museum project, Smith worked from August 27 until November 13, 2012, as a flagman and a general laborer. The contract for the African-American Museum project included two different Davis-Bacon Act wage schedules, Building

5

and Heavy, with the latter generally paying more for the same labor category. Smith received appropriate payment under the Building schedule, but alleges that he should have been paid under the higher-paying Heavy schedule for his work as a flagman.

In September 2012, Smith lodged an oral complaint with the Department of Labor's Wage and Hour Division, alleging that on both projects his pay was less than the Davis-Bacon Act required. The Department of Labor initiated an investigation, and Smith alleges that the investigator concluded that he was not being paid appropriate wages under the Davis-Bacon Act.

On November 14, 2012, Defendants temporarily reassigned Smith and his team members to a residential contract that was not subject to the Davis-Bacon Act. This transfer resulted in decreased wages, increased commuting costs, and a substantially longer commute. After working at the residential site for two weeks, Smith began working on the National Zoo project, where he worked as a general laborer, flagman, and shoveler. Between December 24 and December 31, 2012, Smith was scheduled to work only eight hours, which he alleges was a reduction.

C.

On January 2, 2013, Smith filed a False Claims Act complaint, alleging, inter alia, that (1) Defendants' certification of Davis-Bacon Act compliance on payrolls they

6

submitted for payment constituted false claims because he was not paid appropriate wages on the City Market, African-American Museum, and National Zoo projects; and (2) the November 2012 reassignment and the alleged December 2012 hours reduction were retaliatory.

As required by Section 3730(b)(2), Smith's attorney filed the complaint under seal in camera. The next day, however, Smith's attorney called defendant Clark's in-house counsel to inform him that he had recently filed a False Claims Act case in which Clark was a defendant. During this phone call, the attorney requested that Clark cease retaliating against Smith. [J.A. 247-48] When Clark's in-house counsel asked for a copy of the complaint, Smith's attorney told him that he could not provide a copy because it had to remain under seal for sixty days. The next day, Smith's attorney contacted a Shirley/Metro human resources employee to request Smith's employment records and stated that he had recently filed a False Claims Act complaint in which Shirley/Metro was a defendant.

On January 23, 2013, Smith's attorney served the Government with a copy of the complaint. And on February 7, 2013, an attorney representing Shirley/Metro contacted the Government regarding the communications his client had received from Smith's attorney. Recognizing that there was "little point in maintaining the fiction of a seal when the defendants are aware

7

of the filing," the Government moved for a partial lifting of the seal. J.A. 169. In its memorandum in support of the motion, the Government noted that a partial lifting "may allow the government to better evaluate the relator's claims and speed the determination about whether the government will intervene in this case." J.A. 169. Smith's attorney consented to the Government's motion, and the district court granted it on February 20, 2013.

After requesting and receiving an extension on the deadline by which it had to decide whether to intervene, the Government ultimately elected not to intervene in the case. Defendants then jointly filed a motion to dismiss pursuant to Civil Procedure Rules 12(b)(1) and 12(b)(6). After hearing arguments regarding the motion to dismiss, the district court dismissed all ten counts contained in the complaint with prejudice. Smith appeals only the dismissals of Counts I (Knowingly Presenting False Claims to the Government), II (Knowingly Making False Statements or Records to the Government), and IV (violation of False Claims Act Anti-Retaliation Provision).

## II.

Smith first argues that the district court erred when it dismissed Counts I and II with prejudice. The district court grounded its dismissal of those counts primarily upon the "very

8

serious matter" of the "violation of the statutory seal." J.A. 488. Smith's attorney undoubtedly violated the False Claims Act's seal requirement by publicly discussing the complaint. Am. Civil Liberties Union v. Holder, 673 F.3d 245, 254 (4th Cir. 2011) (recognizing that "the seal provisions [prevent] the relator . . . from publicly discussing the filing of the qui tam complaint"); U.S. ex rel. Lujan v. Hughes Aircraft Co., 67 F.3d 242, 244 (9th Cir. 1995) (holding that plaintiff "clearly violated the seal provision . . . by making statements to [a newspaper about] the existence and nature of her qui tam suit"). The real dispute here centers on whether the district court properly dismissed Smith's case in response to the violation.

The procedural requirements of the False Claims Act, including its seal provision, "are not jurisdictional, and violation of those requirements does not per se require dismissal." Lujan, 67 F.3d at 245. Further, "[n]o provision of the False Claims Act explicitly authorizes dismissal as a sanction for disclosures in violation of the seal requirement." Id. Thus, the False Claims Act, on its face, neither mandates nor expressly supports dismissal with prejudice.

But we recognize that every other circuit to consider this issue has read such authority into the False Claims Act. See, e.g., U.S. ex rel. Summers v. LHC Grp., Inc., 623 F.3d 287 (6th Cir. 2010) (holding that violation of the seal requirements bars

qui tam plaintiffs from qui tam status); Lujan, 67 F.3d 242 (9th Cir. 1995) (creating a 'no harm, no foul' balancing test for determining whether seal violation warrants dismissal); United States ex rel. Pilon v. Martin Marietta Corp., 60 F.3d 995, 998 (2d Cir. 1995) (adopting a test that analyzes whether seal violations "incurably frustrated" the provision's statutory purpose).  Because we find its rationale to be persuasive, we join the Second Circuit and hold that a violation that results in an incurable and egregious frustration of the "statutory objectives underlying the filing and service requirements," Pilon, 60 F.3d at 998, merits dismissal with prejudice under the False Claims Act.

The False Claims Act's seal provision serves several purposes: "(1) to permit the United States to determine whether it already was investigating the fraud allegations (either criminally or civilly); (2) to permit the United States to investigate the allegations to decide whether to intervene; (3) to prevent an alleged fraudster from being tipped off about an investigation; and, (4) to protect the reputation of a defendant in that the defendant is named in a fraud action brought in the name of the United States, but the United States has not yet

decided whether to intervene." <u>Am. Civil Liberties Union</u>, 673 F.3d at 250.[2]

Here, the seal violation did not incurably frustrate these purposes. Although Smith's attorney's breach of the seal requirement tipped off Defendants, the Government was still able to investigate the alleged fraud and determine whether it was already investigating the same issue. The Government even suggested that the fact that Defendants knew about the False Claims Act claim would allow for early responses to the Government's questions, allowing it to "better evaluate the relator's claims and speed the determination about whether [to intervene]." <u>See</u> Appellant's Br. at 22. Additionally, because the seal violation involved disclosure between the parties rather than the public, Defendants' reputations suffered no harm. Accordingly, the False Claims Act does not support the district court's dismissal of Smith's claims with prejudice.[3]

---

[2] <u>But see</u> <u>Lujan</u>, 67 F.3d at 247 (concluding that "protecting the rights of defendants is not an appropriate consideration when evaluating the appropriate sanction for a violation of the seal provision").

[3] We in no way minimize the significance of the violation in this case: By directly informing the Defendants of Smith's qui tam claim, Smith's attorney risked serious interference with the Government's opportunity to investigate the alleged fraud. That risk appears not to have materialized in this case. But such disclosures have the potential to frustrate the purposes of the seal provision in a way that merits dismissal with prejudice, (Continued)

11

III.

The district court offered two additional rationales for dismissing the case: (1) the doctrine of primary jurisdiction, and (2) Rule 9(b) pleadings deficiencies.  We address each in turn.

A.

The district court stated that if its other reasons for dismissal were inadequate, it "would still dismiss or at least stay [the case] pending the outcome of any inquiry by the Department of Labor" regarding "the appropriate wage scale" under the Davis-Bacon Act.  J.A. 489.  It stated that it would take this step as "a simple matter of prudence."  J.A. 489. This particular prudential judicial maneuver is known as the doctrine of primary jurisdiction.

The doctrine of primary jurisdiction "is designed to coordinate administrative and judicial decision-making by taking advantage of agency expertise and referring issues of fact not within the conventional experience of judges or cases which require the exercise of administrative discretion." Envtl. Tech. Council v. Sierra Club, 98 F.3d 774, 789 (4th Cir. 1996). The doctrine of primary jurisdiction "requires the court to

and qui tam claimants are well advised to comply strictly with the FCA's seal requirements.

12

enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." Reiter v. Cooper, 507 U.S. 258, 268 (1993). Notably, such a referral of an issue to an administrative agency "does not deprive the court of jurisdiction; it has discretion either to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice." Id. at 268-69. We review a district court's primary jurisdiction determination for an abuse of discretion. Envtl. Tech. Council, 98 F.3d at 789.

Here, Smith alleges two types of fraud under the False Claims Act. First, he alleges that he was misclassified (that is, paid under the wrong Davis-Bacon Act wage schedule) on the African-American Museum project. Smith's allegations involving misclassification implicate primary jurisdiction: Pursuant to Davis-Bacon Act regulations, the Administrator of the Wage and Hour Division of the Department of Labor is responsible for resolving "disputes of fact or law concerning payment of prevailing wage rates, overtime pay, or proper classifications." 29 C.F.R. § 5.11(a).[4]

---

[4] See also U.S. ex rel. Windsor v. DynCorp, Inc., 895 F. Supp. 844, 851 (E.D. Va. 1995) ("[I]t is impossible to determine whether DynCorp submitted a false claim to the government without first determining whether DynCorp actually misclassified an employee [under the Davis-Bacon Act] in a given instance.").

13

Second, Smith alleges that he was paid a wage that did not correlate with any Davis-Bacon Act wage schedule on the City Market and National Zoo projects.  These allegations do not seem to implicate primary jurisdiction.  To assess the merit of these claims, the district court need only compare Smith's pay stub with the applicable Davis-Bacon wage schedules to determine whether the pay matches up.  See, e.g., U.S. ex rel. Wall v. Circle C Const., L.L.C., 697 F.3d 345, 354 (6th Cir. 2012) (holding that primary jurisdiction referral was unnecessary because "the core dispute here involve[d] misrepresentation, not misclassification").

Although it may be proper for a district court to invoke the doctrine of primary jurisdiction in the face of this mixed picture and thereby stay or dismiss the matter without prejudice pending an agency determination, the district court dismissed Smith's entire complaint with prejudice.  Relying on the doctrine of primary jurisdiction to dismiss Smith's suit with prejudice would constitute an abuse of discretion and thus also does not support the district court's dismissal order.

B.

The district court's third and final rationale for dismissing Counts I and II is inadequate pleading under Civil Procedure Rule 9(b).  Yet this rationale, like the others, provides no basis for dismissing Smith's fraud claims.

14

Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b).  We treat a lack of compliance with Rule 9(b)'s pleading requirements as a failure to state a claim under Rule 12(b)(6), which we review de novo.  Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 n.5 (4th Cir. 1999).

"Rule 9(b) requires that '[a False Claims Act] plaintiff must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" United States v. Triple Canopy, Inc., 775 F.3d 628, 634 (4th Cir. 2015) (quoting United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008)).  And generally, "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Harrison, 176 F.3d at 784.

Our review of Smith's complaint leads us to conclude that Smith did indeed allege the "who, what, when, where and how of

15

the alleged fraud." J.A. 491. In his long and detailed complaint, Smith alleged, for example, that "Defendants, by virtue of Davis-Bacon Act noncompliant compensation and billing practices, have been defrauding the United States Government, District of Columbia, and other state and local governments and instrumentalities in a variety of ways, including, but not limited to, knowingly providing false information via certified payrolls in exchange for payment . . . ." J.A. 17. Smith's complaint detailed which Defendants were awarded and working on which government contracts, including details about where the construction work that was the subject of the contracts was to occur, the award date for the contracts, and even some contract numbers. See J.A. 21-24.

Smith's complaint specified which government entities funded pertinent contracts on which he worked and alleged that all were funded in part by the United States. Smith's complaint stated that Defendants "certif[ied] compliance with the Davis Bacon Act" and "have received payment in relation to the reliance of cognizant government agencies . . . upon falsely certified payrolls and other Davis Bacon Act certifications made in relation to [] performance" of the identified contracts. J.A. 25. Smith's complaint included charts detailing Davis-Bacon pay and fringe benefit rates and what Defendants actually and deliberately wrongly paid him under the identified

16

contracts. Smith alleged that, "[a]s a result of these misrepresentations, the federal government has been damaged by paying a higher amount for wages that were not paid to Brian Smith and potentially other affected employees." J.A. 34. And Smith's complaint identified several other employees whom Defendants allegedly misclassified and underpaid under the Davis-Bacon Act. See J.A. 42-45.

In sum, Smith's complaint identified who committed fraud— Defendants; alleged that the Davis-Bacon Act applied to the pertinent contracts; contended that Defendants paid Smith and others less than the Davis-Bacon Act required, specifically identifying Smith's pay and comparing it to the applicable Davis-Bacon Act pay scales; and alleged that Defendants falsely certified their compliance with the Davis-Bacon Act to the Government, which caused the Government to make improperly inflated payments to Defendants. These allegations pass Rule 9(b) muster. See, e.g., Harrison, 352 F.3d at 921. That rule therefore could not properly serve as a basis to dismiss Smith's claims with prejudice.[5]

---

[5] Smith's attorney orally moved to amend the complaint to address the district court's Rule 9(b) concerns. The district court ostensibly denied this motion. Because Smith had already satisfied Rule 9(b), we affirm the district court's denial of this motion as moot.

17

Having reviewed all of the district court's stated rationales for dismissing Smith's complaint with prejudice, we find ourselves unable to affirm any. We therefore reverse the district court's dismissal of Counts I and II.

IV.

Count IV of Smith's complaint sought relief under the False Claims Act's anti-retaliation provision, 31 U.S.C. § 3730(h). The district court dismissed Count IV with prejudice, holding that Smith failed to successfully allege retaliation.

The False Claims Act's whistleblower provision, which Congress broadened in 2009, prohibits retaliation "because of lawful acts done . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h). To plead retaliation under Section 3730(h), a plaintiff must allege that (1) he engaged in protected activity, (2) the employer knew about the activity, and (3) the employer took adverse action against him as a result. Glynn v. EDO Corp., 710 F.3d 209, 214 (4th Cir. 2013). These allegations need pass only Civil Procedure Rule 8(a)'s relatively low notice-pleadings muster—in contrast to Rule 9(b)'s specificity requirements discussed above. See, e.g., Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1103 (9th

18

Cir. 2008); <u>United States ex rel. Williams v. Martin-Baker Aircraft Co.</u>, 389 F.3d 1251, 1259-60 (D.C. Cir. 2004).

Here, the district court assumed that Smith satisfied the first prong—protected activity—but concluded that he failed to demonstrate that Defendants knew of his conduct or took adverse action against him because of those acts—the second and third prongs. In its ruling from the bench, the district court noted no "factual basis for alleging that the defendants were aware that [Smith] was <u>pursuing a claim of a fraudulent false claim</u> with the United States." J.A. 493 (emphasis added). Accordingly, it held that "there cannot be any sufficient pleading of the employers taking action as a result of acts that it never had knowledge of and there's been no allegation that they did have knowledge of them." J.A. 493.

It strains credulity to believe that Congress would require a defendant to have knowledge of a <u>sealed</u> action for a retaliation claim to survive the pleading stage. What's more, the statute in its current form plainly does not limit protected activity to "lawful acts done . . . in furtherance of an action" under the False Claims Act, but rather expressly includes "other efforts to stop 1 or more violations" of the False Claims Act. 31 U.S.C. § 3730(h). While we have not yet spelled out the contours of "other efforts to stop" a False Claims Act violation, it plainly encompasses more than just activities

19

undertaken in furtherance of a False Claims Act lawsuit. See id.; see also U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc., 772 F.3d 1102, 1108 (7th Cir. 2014) (Posner, J.) (indicating that amended statute covers more than prior version). Thus, even assuming for the sake of argument that Smith provided no "factual basis for alleging that the defendants were aware that [Smith] was pursuing a claim of a fraudulent false claim," J.A. 493 (emphasis added), that would not necessarily mean he has pled no plausible factual underpinning for a retaliation claim.[6] Further, Smith pled that Defendants knew that he had pursued an investigation with the Department of Labor, and the facts salient to that investigation make up the bulk of the facts supporting Smith's False Claims Act qui tam claims. This suffices to fulfill the knowledge prong.

Turning to the third prong required to make out a retaliation claim, the district court made only the conclusory statement that the defendants did not "[take] action against

---

[6] Neither the district court nor the parties appear to have recognized that 31 U.S.C. § 3730(h) was amended, much less the amendment's potential import. Regardless, we must apply the correct law, here the amended version of the statute. See Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.").

20

[Smith] as a result of those acts." J.A. 493. Upon reviewing Smith's complaint, however, we cannot reach the same conclusion.

An employer undertakes a materially adverse action opening it up to retaliation liability if it does something that "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 67–68 (2006) (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). Here, Smith alleged that after lodging a complaint with the Department of Labor that resulted in an investigation, he was transferred to a lower-paying job site that substantially increased his commute time and transportation costs. This action might well dissuade a reasonable worker from whistleblowing. And while Defendants muster a couple of easily distinguishable cases to support their argument to the contrary, none of those mandates a holding that reassignments that increase commute time and costs and decrease pay are insufficient, as a matter of law, to support a retaliation claim.

We hold that Smith has successfully pled retaliation under Section 3730(h). The district court thus erred when it granted Defendants' motion to dismiss that claim.

V.

In sum, we hold that the district court erred when it dismissed Counts I, II, and IV of Smith's complaint with prejudice. In light of this holding, the district court's award of costs to Defendants is also improper. Cf. Kollsman, a Div. of Sequa Corp. v. Cohen, 996 F.2d 702, 706 (4th Cir. 1993) (holding that defendant was a prevailing party eligible to receive costs where there had been a dismissal with prejudice); Fed. R. Civ. P. 54 ("Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party.").

For the aforementioned reasons, we affirm the district court's denial of Smith's oral motion to amend, reverse the order granting a dismissal with prejudice as to counts I, II, and IV—the only counts on appeal, vacate the costs order, and remand to the district court for further proceedings in accordance with this opinion.

AFFIRMED IN PART, REVERSED IN PART,
VACATED IN PART, AND REMANDED
FOR FURTHER PROCEEDINGS

22