**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JOHN DOE,
*Defendant-Appellant.*

No. 15-50259

D.C. No.
3:14-cr-03118-LAB-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted May 12, 2017
Pasadena, California

Filed September 12, 2017

Before: Morgan Christen and Paul J. Watford, Circuit
Judges, and James Alan Soto,[*] District Judge.

Opinion by Judge Christen

---

[*] The Honorable James Alan Soto, United States District Judge for the District of Arizona, sitting by designation.

## SUMMARY[**]

---

### Criminal Law

The panel reversed the district court's order denying the defendant's motion to seal all documents relating to, or disclosing the existence of, the government's motion under U.S.S.G. § 5K1.1 to reduce the defendant's sentence for substantial assistance in the prosecution of other offenders.

The panel assumed without deciding that the public's qualified First Amendment right of access to court documents and proceedings attached to the documents that the defendant sought to seal, and concluded that the facts of this case rebutted any resulting presumption of openness. The panel concluded that absent closure, the record established that there was a substantial probability of harm to compelling interests in the defendant's case. These interests included risks to the defendant and his family and (as discussed in section II.A.2) risks to ongoing investigations. The panel also concluded that there were no adequate alternatives to closure.

Considering the report and recommendations from the Committee on Court Administration and Case Management of the Judicial Conference of the United States concerning the protection of ongoing government investigations, cooperators, and their families, the panel wrote that a sealed supplement in all criminal dockets would prevent the fact of cooperation from becoming immediately apparent, and also deter the illicit use of court documents to harm cooperators.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel reversed the denial of the defendant's motion to seal and the denial of his motion to strike and replace the docket entry text mentioning § 5K1.1, and remanded for sealing in accordance with the panel's opinion.

Judge Watford joined the court's opinion in full, with the exception of section II.A.2.

## COUNSEL

Kurt D. Hermansen (argued), Law Office of Kurt David Hermansen, San Diego, California, for Defendant-Appellant.

Daniel E. Zipp (argued), Assistant United States Attorney; Peter Ko, Chief, Appellate Section, Criminal Division; United States Attorney's Office, San Diego, California; for Plaintiff-Appellee.

## OPINION

CHRISTEN, Circuit Judge:

Defendant-appellant Doe[1] pleaded guilty to importing a controlled substance into the United States and provided detailed, verifiable information to the government about members of an international drug cartel. The government found the information so useful that it filed a motion to reduce Doe's sentence by five levels under U.S.S.G. § 5K1.1, which allows the government to request sentencing

---

[1] We refer to defendant-appellant by the pseudonym "Doe" to protect his identity and safety.

reductions for defendants who provide substantial assistance in the prosecution of other offenders.  Fearful that his cooperation with the government endangered his life and the lives of his family members, Doe moved to seal all documents related to, or disclosing the existence of, the § 5K1.1 motion.  The district court denied the motion to seal. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.[2]  The circumstances here required the district court to seal all documents revealing Doe's cooperation and to strike references to § 5K1.1 in the docket entry text.  We take this occasion to consider the report and recommendations from the Committee on Court Administration and Case Management of the Judicial Conference of the United States (CCACM) concerning the protection of ongoing government investigations, cooperators, and their families.[3]

## BACKGROUND

After pleading guilty to knowingly importing a large amount of methamphetamine into the United States, Doe provided the names, telephone numbers, addresses, and physical descriptions of others involved in importing and distributing methamphetamine.  The government believed that the information was generally accurate and reliable, and at least one person Doe described was later arrested.

---

[2] Judge Watford joins the court's opinion in full, with the exception of section II.A.2.

[3] *See* Comm. on Ct. Admin. & Case Mgmt. of the Judicial Conference of the U.S., *Interim Guidance for Cooperator Information* (June 30, 2016), http://www.uscourts.gov/sites/default/files/2016-09-criminal-agenda_book_0.pdf (CCACM Report).

Based on Doe's cooperation, the government filed a motion to reduce his sentence under U.S.S.G. § 5K1.1 for "substantial assistance,"[4] including mention of § 5K1.1 in the title of its motion ("Motion for Downward Departure Under USSG § 5K1.1"). In its memorandum in support of a § 5K1.1 downward departure, the government described how Doe recognized other defendants in court during one of his appearances and provided information about their involvement in smuggling methamphetamine into the United States. The government acknowledged that the risk of retaliation or harm to Doe was, "perhaps, greater than in some other circumstances" because he provided information about others in and out of custody. The government's memorandum did not reveal any specific threats against Doe or his family, but the government asserted "that a meaningful risk of harm exists."

The government also filed: (1) a motion to seal the memorandum in support of a downward departure, which cited § 5K1.1 in its title and (2) a sentencing summary chart that included a five-level downward departure for "5K1.1." The government later filed an amended motion for a downward departure under § 5K1.1 due to an incorrect case number in its first motion. As is typical, the public docket reflected the title of the government's filings, including several references to § 5K1.1.

Doe moved to strike the public docket entry text for the government's filings and replace it with more generic

---

[4] "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." U.S.S.G. § 5K1.1.

descriptions of the documents. The district court denied Doe's motion in a written order, concluding that the First Amendment created a presumption of public access and Doe failed to rebut that presumption. Indeed, the district court expressed doubt that a defendant could ever rebut the presumption of openness concerning a motion seeking a § 5K1.1 departure. The court noted that although the government is "invariably" allowed to file under seal its reasons for concluding that a § 5K1.1 motion is warranted, the court always mentions § 5K1.1 in its oral pronouncement of sentences when the government makes such motions. The district court reasoned that "the § 5K1.1 departure 'cat' is typically out of the bag at a defendant's sentencing" and "striking references in the docket to a motion and section of the Guidelines that will undoubtedly be mentioned in open court during the defendant's sentencing makes little sense." In addition to filing this order in the publicly and electronically accessible record, the district court filed an order granting the government's motion to seal its memorandum in support of the motion for a § 5K1.1 downward departure.

After his motion to strike was denied, Doe opted against further electronic filings and manually filed, under seal, a hard-copy motion to seal each publicly available document that referred to § 5K1.1 and his substantial assistance. This motion alternatively requested that the district court redact any references to § 5K1.1 and substantial assistance. Doe's motion to seal argued that the public references to his cooperation with the government unnecessarily risked his life, the lives of his family members, and the success of the ongoing government investigation. The government did not oppose Doe's motion to seal.

The district court denied Doe's motion to seal immediately before his sentencing hearing, concluding, once again, that Doe failed to rebut the presumption of openness that arises pursuant to the First Amendment.  In its oral ruling, the district court found it significant that neither Doe "nor the Government are aware of any specific threats to [Doe]" and "[t]here's no specific threats to family members." The district court mentioned the possibility of a witness protection program, but it rejected the use of any alternatives to sealing absent "specific threats of harm."  The court did not discuss Doe's written statement, contained in the presentence report, that someone in the cartel told him, "Don't play us dirty because we know where your family is."  Nor did the district court discuss the implications of the fact that Doe had his three-year-old daughter with him when he crossed the border into the United States in possession of substantial amounts of methamphetamine.

The district court explained that, in its anecdotal experience, defendants are given credit for providing "information that goes nowhere" and "a lot of times . . . the story is made up."  The district court suggested that Doe moved to seal simply "because 5K is mentioned," but in the district court's view, "it's just silly.  It's perpetuating a lie."

The court also continued to emphasize that Doe's assistance to the government would become public during sentencing, repeating the view that "the cat's out of the bag." In the sentencing hearing that followed, the district court mentioned only "5K" in open court; never "5K1.1."  Section 5K allows for downward and upward departures from the guidelines based on factors unrelated to cooperation, such as whether the defendant committed the offense to avoid a greater perceived harm.  *See, e.g.*, U.S.S.G. § 5K2.11.  It

appears that the district court had no occasion to weigh concrete interests of specific third parties seeking access to the documents concerning § 5K1.1 in Doe's case because no members of the media expressed interest in Doe's sentencing, and no one has ever publicly sought access to Doe's court file or proceedings.

Doe appeals the district court's refusal to seal several § 5K1.1-related documents: (1) the government's motion for a downward departure (Docket 35); (2) the government's motion to seal its memorandum in support of a downward departure (Docket 36); (3) the government's sentencing summary chart (Docket 37); (4) the government's amended motion for a downward departure (Docket 42); (5) the district court's order denying the motion to strike and replace docket text (Docket 44); and (6) the district court's order granting the government's motion to seal its memorandum in support of a downward departure (Docket 45). Doe also appeals the district court's denial of his motion to strike and replace the docket entries for two filings: (1) the government's motion for a downward departure (Docket 35); and (2) the government's motion to seal (Docket 36). The docket text itself identifies Doe as a defendant who substantially assisted the government.[5]

---

[5] The following district court docket entries are sealed pending appeal and currently do not appear on the district court docket: docket entry 35 (Withdrawn "Motion for Downward Departure Under USSG 5K1.1 by USA"), 36 ("Motion to Allow Sealing of Memorandum in Support of Motion for Downward Departure Under USSG 5K1.1 by USA"), 37 ("Sentencing Summary Chart by USA"), 42 ("Motion for Downward Departure by USA"), 44 (Order Denying "Motion to Strike and Replace"), and 45 (Order Granting "Motion to Allow Sealing of Memorandum in Support of Motion for Downward Departure").

## STANDARD OF REVIEW

"We review de novo whether the public has a right of access to the judicial record of court proceedings under the First Amendment, the common law, or [the Federal Rules of Criminal Procedure], because these are questions of law." *United States v. Index Newspapers LLC*, 766 F.3d 1072, 1081 (9th Cir. 2014). When a district court "conscientiously balances" the interests of the public and the party seeking to keep secret certain judicial records, we review a decision whether or not to seal the judicial records for abuse of discretion. *See id.*; *United States v. Bus. of Custer Battlefield Museum & Store Located at Interstate 90, Exit 514, S. of Billings, Mont.*, 658 F.3d 1188, 1195 (9th Cir. 2011).

## DISCUSSION

**I.    The Public Generally Has a Qualified First Amendment Right of Access to Court Documents and Proceedings.**

"The law recognizes two qualified rights of access to judicial proceedings and records . . . ." *Custer Battlefield*, 658 F.3d at 1192. There is "'a First Amendment right of access to criminal proceedings' and documents therein." *Id.* (quoting *Press-Enter. Co. v. Super. Ct.*, 478 U.S. 1, 8 (1986) (*Press-Enter. II*)). There is also "a common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Id.* (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). "The First Amendment is generally understood to provide a stronger right of access than the common law." *Id.* at 1197 n.7.

Courts must ask two questions to determine whether a qualified First Amendment right of public access applies to a particular proceeding or document: (1) "whether the place and process have historically been open to the press and general public"; and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enter. II*, 478 U.S. at 8. This two-part test is commonly referred to as the "experience and logic" test. *See id.* at 9; *Index Newspapers*, 766 F.3d at 1086. Even when the experience and logic test is satisfied, however, the public's First Amendment right of access establishes only a strong presumption of openness, and "the public still can be denied access if closure 'is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest.'" *Times Mirror Co. v. United States*, 873 F.2d 1210, 1211 n.1 (9th Cir. 1989) (quoting *Press-Enter. Co. v. Super. Ct.*, 464 U.S. 501, 509–10 (1984) (*Press-Enter. I*)).

We have held that a qualified First Amendment right of public access attaches to in-court sentencing proceedings. *See United States v. Rivera*, 682 F.3d 1223, 1229 (9th Cir. 2012); *United States v. Biagon*, 510 F.3d 844, 848 (9th Cir. 2007); *CBS, Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 765 F.2d 823, 825 (9th Cir. 1985). In a case that was the subject of significant media attention, *CBS* extended the qualified right of public access to a motion to reduce a high-profile defendant's sentence under Federal Rule of Criminal Procedure 35(b) for post-sentencing assistance in investigating or prosecuting another person. 765 F.2d at 826. *In re Copley Press, Inc.*, 518 F.3d 1022 (9th Cir. 2008), held that the public has a qualified First Amendment right of access to: (1) a plea agreement cooperation addendum; (2) the government's motion to seal the plea agreement and memorandum in support of it; (3) the district court's orders

granting the government's motion to seal; (4) the defendant's plea colloquy transcript; and (5) the transcripts of those portions of the hearings on the government's motion to seal that were open to the public. *Id.* at 1026–28. But *Copley Press* also held that the public has no right of access to declarations and documents attached to a motion to seal, *id.*, and neither this court nor the Supreme Court has ever specifically addressed whether the public has a qualified First Amendment right of access to written documents relating to § 5K1.1.

Doe argues that the public has neither a First Amendment right nor a common law right of access to § 5K1.1-related documents. The district court did not reach the common law question because it concluded that the stronger First Amendment right of public access applied. *See United States v. Bus. of Custer Battlefield Museum & Store Located at Interstate 90, Exit 514, S. of Billings, Mont.*, 658 F.3d 1188, 1197 n.7 (9th Cir. 2011). There are substantial similarities between the documents at issue in this case and the documents to which a qualified First Amendment right of access attaches pursuant to our holdings in *CBS* and *Copley Press*. On the other hand, when we decided *CBS* and *Copley Press*, electronic filing had not made court documents so easily accessible, nor had the CCACM released its report finding that new inmates are often required by other prisoners to produce copies of their case dockets to prove they did not cooperate with the government. *See* CCACM Report at 2. Here, we find it unnecessary to apply the experience and logic test to decide whether a qualified First Amendment right of public access attaches to the documents that Doe seeks to seal. We assume without deciding that there is such a right, and conclude that the facts of this case rebut any resulting presumption of openness.

## II. Doe Rebutted Any Presumption of Openness that Arose from a Qualified First Amendment Right of Public Access.

Where the public has a qualified First Amendment right of access, "criminal proceedings and documents may be closed to the public without violating the [F]irst [A]mendment only if three substantive requirements are satisfied: (1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *Oregonian Publ'g Co. v. U.S. Dist. Ct. for Dist. of Or.*, 920 F.2d 1462, 1466 (9th Cir. 1990); *see also Times Mirror Co. v. United States*, 873 F.2d 1210, 1211 n.1 (9th Cir. 1989). "The court must not base its decision on conclusory assertions alone, but must make specific factual findings." *Oregonian*, 920 F.2d at 1466.

### A. Absent Closure, the Record Establishes that There Is a Substantial Probability of Harm to Compelling Interests in Doe's Case.

Because there is significant overlap as they pertain to the facts of Doe's case, we address together the first two prongs of the test for overcoming the qualified First Amendment right of public access. Doe argues that closure serves at least three compelling interests: (1) protecting his life; (2) protecting his family members' lives; and (3) preserving the government's ongoing investigations based on the information he provided. He argues that he established a substantial probability of harm to these interests based on the evidence that: (1) the cartel is wealthy enough to seek retribution against him and his family if it learns of his

cooperation; (2) retaliation is very likely because he provided information about nine international drug-trafficking cartel members; and (3) agents corroborated his information, indicating it was credible enough to lead to prosecutions against real people.

### 1.   The Risks to Doe and His Family

In its briefing, the government echoes the argument it made in its memorandum in support of a downward departure.  It acknowledges that the risks to cooperators and their families "could, in many cases, constitute a 'compelling interest' to justify sealing."  The government appears to concede that closure would serve these interests in Doe's case, but it ultimately takes the position that the district court's orders should be affirmed.

Nonetheless, in its memorandum in support of a downward departure and on appeal, the government describes why the risk to Doe was "heightened" in this case: (1) his offense involved a large international drug-trafficking organization; (2) he lost a load of methamphetamine with a conservative estimated street value of more than half a million dollars; (3) Doe was involved in multiple border crossings and delivered narcotics to numerous locations throughout Southern California; and (4) he cooperated while he was in pre-trial detention by providing incriminating information about others who were also incarcerated. Moreover, Doe provided information about other defendants whom he recognized during a court appearance.  Presumably, these defendants recognized Doe as well, further jeopardizing his safety if his cooperation became public.  The government also describes the potential risk to Doe's family, crediting the statement in the presentence report that a member of the

cartel told Doe: "Don't play us dirty because we know where your family is."

When considering this same evidence, the district court was not persuaded that, absent closure, harm would befall Doe or his family. Its ruling primarily rested on the fact that neither Doe nor the government identified specific threats. Without direct evidence of retaliation, the district court concluded that the risk was "entirely speculative. There's nothing at all." For several reasons, we respectfully disagree with the district court's assessment.

First, "[i]t is the government that is in the position to know the effects of defendants' provided information." *United States v. Ressam*, 679 F.3d 1069, 1092–93 (9th Cir. 2012). When it filed its memorandum in support of a downward departure and outlined the risks to Doe, the government had access to more complete information than the district court to assess the likelihood of harm. That being the case, the fact that the government did not identify specific threats on the record did not make the risk "entirely speculative." Second, direct threats are not "a strict condition precedent to a district court's granting of a closure motion," *United States v. Doe*, 63 F.3d 121, 130 (2d Cir. 1995). Finally, the district court's conclusion that the risks to Doe and his family were speculative is contradicted by the evidence in the record about Doe's involvement with a wealthy, international cartel that threatened his family if he "play[ed] . . . dirty," and which lost roughly half a million dollars as a result of Doe's arrest, and the government's confirmation of the legitimacy of his information.

The district court did not have the benefit of the CCACM Report, which sheds considerable light on the dangers faced

by those who agree to cooperate with government investigations. The report summarizes the results of a 2015 national survey of district judges, U.S. attorneys, federal defenders, and others involved in the criminal justice system.[6] District judges reported 571 instances of harm or threats, either physical or economic, to defendants and witnesses between the spring of 2012 and the spring of 2015. CCACM Report at 2. This included 31 murders of defendant cooperators. *Id.* District judges also reported 363 instances of court records being used to identify cooperators. *Id.* The report cautions: "This is a particular problem in our prisons, where new inmates are routinely required by other inmates to produce dockets or case documents in order to prove whether or not they cooperated. If the new inmates refuse to produce the documents, they are punished." *Id.* Notwithstanding the lack of more specific threats to Doe and his family, the court erred when it failed to find a substantial risk to compelling interests under the facts of this case.

The district court also found that there was no significant risk of harm absent closure because Doe's cooperation inevitably would be made public during the oral sentencing. Doe argues that in prison an essential difference exists between unsubstantiated claims that someone cooperated with prosecutors and actual "paper" proof, in the form of official court filings, confirming cooperation. The CCACM Report verifies that orally pronouncing a sentence, including references to § 5K1.1, does not jeopardize defendants in the same way as memorializing someone's cooperation in publicly accessible documents that easily may be viewed

---

[6] *See* Fed. Judicial Ctr., *Survey of Harm to Cooperators* (Feb. 12, 2016), https://www.fjc.gov/content/310414/survey-harm-cooperators-final-report.

online.  *See* CCACM Report at 1–2 ("Remote electronic access dramatically increased the potential for illicit use of case information regarding cooperators . . . .").  The district court's order did not recognize this distinction.

In an effort to defend the district court's ruling, the government suggests that there may not be a substantial risk of harm to Doe and his family because at the time of sentencing, Doe's cooperation "had not produced tangible results, so no one was facing charges who would have had an axe to grind with [Doe] (at least based on his cooperation)." But Doe provided information about the criminal activity of people whom he recognized in court, and at least one person he identified was subsequently arrested.  On appeal, the government argues this arrest was made for unrelated reasons—the discovery of methamphetamine during a routine traffic stop—but that individual might view Doe's cooperation, if it were made public, as something more than mere coincidence.  That is a risk Doe should not have to bear.

### 2.   The Risks to Ongoing Investigations

The district court concluded that the government's interest in ongoing investigations was not compelling or likely to be harmed absent closure because, "most of the time, the 5K credit is given for information that goes nowhere." But like its assessment of the threat to Doe and his family, the district court's finding in regard to the government's interest in ongoing investigations was contradicted by the evidence in the record.  In the government's memorandum in support of a downward departure, the government described how it confirmed that almost all of Doe's information was accurate, that he had provided information about people in and out of custody, and that agents believed future arrests based on this

information remained possible. The government was in a better position to assess the risks to its ongoing investigations, and it decided that Doe's cooperation warranted a five-level downward departure.

On appeal, the government further acknowledges its institutional imperative to protect its ongoing investigations: "The United States maintained a legitimate, structural interest in sealing the evidence of [Doe's] cooperation in order to protect the integrity of future criminal investigations and the willingness of future defendants to provide substantial assistance to the government." "Substantial weight should be given to the government's evaluation of the extent of the defendant's assistance, particularly where the extent and value of the assistance are difficult to ascertain." U.S.S.G. § 5K1.1, appl. n.3. Under the circumstances of this case, it was error to second-guess the government's asserted interest in future criminal investigations and the potential harm that disclosing Doe's cooperation could cause to those investigations.

The fact that the government did not join Doe's motion to seal factored into the district court's analysis of whether ongoing investigations would be harmed absent closure. But the government did not receive Doe's motion to seal until the morning of sentencing and merely stated that it had "not had a chance to skim through it." Doe had no objection to continuing the proceedings for another week, but the district court went forward with ruling on the motion. Notably, the government did not object to Doe's motion to seal and it had already moved to seal the underlying reasons for a § 5K1.1 departure. The government's failure to join Doe's motion to seal was not a proxy for the substantial probability of harm to ongoing investigations.

In sum, the evidence in the record establishes a significant probability of harm to compelling interests absent closure. Doe satisfied the first and second prongs of the test for overriding a qualified First Amendment right of public access.

**B. The Record Establishes That There Are No Adequate Alternatives to Closure in Doe's Case.**

The district court did not seriously consider any alternatives to closure because it found no substantial probability of harm to compelling interests. But even if the district court had considered such alternatives, the evidence in the record establishes their inadequacy. Redacting portions of the motions, orders, sentencing chart, and docket entries would not sufficiently protect Doe. In fact, under the circumstances here, doing so would flag the filings in his case. The publicly available and remotely accessible filings would immediately look different from the filings in non-cooperators' cases, so this well-intentioned measure would result in docket entries that readily signal Doe's cooperation.

Moreover, as the government acknowledges, using "5K" as opposed to "5K1.1" would not help because it is implausible that someone—especially any one of the people Doe recognized in court or the person he identified who was subsequently arrested—would assume "5K" means something other than substantial cooperation in Doe's case, given the context and Doe's sentencing reduction. The record amply demonstrates the inadequacy of alternatives to closure. Doe therefore satisfied the third prong of the test for overriding a qualified First Amendment right of public access. *See CBS, Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 765 F.2d 823, 826 (9th Cir. 1985) ("We do not foreclose the

possibility that in an extreme case [alternatives to closure such as redaction] would be untenable and that court files and proceedings on post-conviction matters would therefore be closed . . . ."). The district court abused its discretion by denying Doe's motion to seal docket entries 35–37, 42, 44, and 45, and to strike references to the sentencing guidelines in the docket text of entries 35 and 36. Here, closure is warranted.

## III. A Sealed Supplement in All Dockets Would Prevent the Fact of Cooperation From Becoming Immediately Apparent, and Also Deter the Illicit Use of Court Documents to Harm Cooperators.

The CCACM Report highlights the grave threats faced by defendants who cooperate with the government in the era of remote electronic access to court files, but the threat to cooperators "also interferes with the gathering of evidence" and "the presentation of witnesses." CCACM Report at 7. The CCACM Report concludes that "[b]ecause criminal case dockets are being compared in order to identify cooperators, every criminal case is implicated." *Id.* at 3.

Pending the development of a national rule for cooperator information, the CCACM Report "recommends that, in all criminal cases, courts restructure their practices so that documents or transcripts that typically contain cooperation information—if any—would include a sealed supplement. Any discussion of defendants' cooperation—or lack thereof—would then be limited to these sealed supplements." *Id.* All plea agreements and sentencing memoranda would have a public portion and a sealed supplement, and all transcripts of guilty pleas would include "a sealed portion containing a conference at the bench that w[ould] either

contain any discussion of or references to the defendant's cooperation, or simply state that there is no agreement for cooperation." *Id.* at 8. Similarly, under the CCACM Report's recommendation, all sentencing transcripts would "include a sealed portion containing a conference at the bench, which reflects either (a) any discussion of or references to the defendant's cooperation, including the court's ruling on any sentencing motion relating to the defendant's cooperation; or (b) a statement that there has been no cooperation." *Id.* Finally, all Rule 35(b) motions would be sealed, and if district courts received requests for criminal docket entries, a letter explaining that all cases contain sealed supplements would accompany the requested documents. *Id.* at 8–9. The upshot of the CCACM Report's recommendation is that, if accessed by a member of the public, electronically or otherwise, cooperating defendants' dockets would not include red flags signaling their cooperation.

We do not decide here whether our precedent allows district courts to follow the CCACM Report's guidance in its entirety. *See In re Copley Press, Inc.*, 518 F.3d 1022, 1026–27 (9th Cir. 2008) (holding that a qualified First Amendment right of public access attaches to, among other documents, a plea colloquy transcript); *CBS, Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 765 F.2d 823, 825–26 (9th Cir. 1985) (holding that a qualified First Amendment right of public access attaches to a Rule 35 motion). For its part, the CCACM Report expresses concern that *Copley Press* "may impact court efforts to implement" its recommendations in our circuit, correctly recognizing that a presumption of closure for all court filings would not be consistent with our circuit's case law. CCACM Report at 4 n.6.

But nothing in our precedent prevents district courts from adopting some variation of the practices recommended by the CCACM Report, as long as district courts decide motions to seal or redact on a case-by-case basis. Without running afoul of *Copley Press*, district courts could include cooperation information in a sealed supplement if the presumption of openness is overcome. Our precedent also allows the presumptive sealing of documents attached to a motion to seal while district courts consider whether the documents should be made public. *See Copley Press*, 518 F.3d at 1029 ("The public has no right to access the declarations and documentation appended to the government's March 16 motion to seal . . . ."). As we have noted: "Secrecy is a one-way street: Once information is published, it cannot be made secret again." *Id.* at 1025. In light of the CCACM Report's revelations about the risks posed by remote electronic access to court filings, caution is warranted. By reference to the CCACM Report, however, we do not suggest that district courts should take one course of action over another. The CCACM Report simply describes one alternative. District courts may wish to consider employing other alternatives, consistent with our case law, to protect cooperators from retaliation and to safeguard ongoing investigations.

Assuming that a qualified First Amendment right of public access attached to the § 5K1.1 documents in this case, Doe successfully rebutted the presumption of openness. Accordingly, we **REVERSE** the denial of Doe's motion to seal and denial of Doe's motion to strike and replace the docket entry text mentioning § 5K1.1. We **REMAND** for sealing in accordance with this opinion.