**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-6152**

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

       v.

JOHN DOE,

              Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  James C. Dever III, District Judge.  (7:11-cr-00085-D-1)

Submitted:  March 27, 2020                    Decided:  June 17, 2020

Before MOTZ, WYNN, and RICHARDSON, Circuit Judges.

Reversed and remanded by published opinion. Judge Wynn wrote the majority opinion, in which Judge Motz joined.  Judge Richardson wrote a dissenting opinion.

G. Alan DuBois, Federal Public Defender, Stephen C. Gordon, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Robert J. Higdon, Jr., United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

WYNN, Circuit Judge:

Defendant appeals the district court's order denying his motion to seal.[1] Defendant, a federal inmate, argues that the district court unnecessarily exposed him to harm by issuing an order that referred to his cooperation with the government. Fearful that other inmates would use online legal research services to discover the district court's order and, consequently, his cooperation, Defendant moved to seal the order.

Defendant's request implicates the public's interest in accessing judicial records, the government's interest in protecting cooperating defendants in federal custody, and Defendant's interest in his own safety. But the district court summarily denied Defendant's motion. The court ignored facts showing that Defendant faces a heightened risk of harm in prison and failed to consider the increased risks that all government cooperators now face due to the advent of electronic filing and the use of the internet to identify cooperators. Accordingly, we reverse and remand with an order to seal the order in question.

I.

In 2012, Defendant pleaded guilty to conspiracy to distribute and possession with intent to distribute 28 grams or more of cocaine base and 500 grams or more of cocaine.

---

[1] Given the sensitive nature of this case, we have opted to "refer to [Defendant] by the pseudonym 'Doe' to protect his identity and safety." *United States v. Doe*, 870 F.3d 991, 994 n.1 (9th Cir. 2017); *see also Fla. Star v. B.J.F.*, 491 U.S. 524, 527 n.2 (1989) (using initials to protect the appellee's privacy); *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993) ("[U]nder appropriate circumstances anonymity may, as a matter of discretion, be permitted."). On remand, the district court shall also anonymize the case. *See* Order Revising Docket, *United States v. Doe*, No. 3:14-cr-03118-LAB-1 (S.D. Cal. Oct. 18, 2017) ("The Ninth Circuit has ordered that the docket in this case be altered to disguise and conceal the defendant's true name.").

At sentencing, the government moved for a downward departure under U.S. Sentencing Guidelines § 5K1.1 in light of Defendant's substantial assistance. The government explained that Defendant had willingly provided information to state authorities even before he was federally indicted. Defendant described multistate drug-trafficking networks and provided information about in-state drug dealers and multiple home invasion robberies. The information proved credible and was used in another individual's sentencing, as well as in several investigations.

After balancing the sentencing factors, the district court sentenced Defendant to 252 months' imprisonment—a significant downward departure from his Guidelines range of 292 to 365 months. Defendant did not appeal his sentence.

In 2016, Defendant moved for a sentence reduction under 18 U.S.C. § 3582(c)(2) and Guidelines Amendment 782, which lowered base offense levels for federal drug crimes. According to Defendant, under the Amendment, his new Guidelines range was 235 to 293 months. The district court denied the § 3582 motion in July 2018.

In explaining Defendant's original 252-month sentence, the district court's order denying Defendant's § 3582 motion referred to the government's § 5K1.1 motion. Defendant became concerned about that reference, and in November 2018, he moved to seal the district court's order and to remove its contents from online legal research services. Defendant contended that the district court's reference to his cooperation threatened his safety because the order was available to other inmates through the prison law library.

The district court denied Defendant's motion to seal in a text order issued in late December 2018. Citing *Doe v. Public Citizen*, 749 F.3d 246, 272–73 (4th Cir. 2014), the

3

court noted that the underlying order "ha[d] been public since July 30, 2018." J.A. 14.[2]

Defendant timely appealed in January 2019.[3]

In February 2019, the district court issued a one-paragraph written order that again denied Defendant's motion to seal. That order contained little more analysis than the text order, stating only that "[t]he court has carefully weighed the interests discussed in [Defendant]'s motion to seal and those interests favoring public access to judicial documents and records" and that the court would deny the motion. J.A. 26 (citing *Doe*, 749 F.3d at 265–69).

II.

Before reaching the merits, we must consider whether this Court has jurisdiction over Defendant's appeal. Federal courts have an independent duty to confirm their own jurisdiction even when, as here, it is unquestioned by the parties. *See Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 187 (4th Cir. 2019). Under 28 U.S.C. §§ 1291 and 1292, we have jurisdiction only over final orders and certain interlocutory and collateral orders. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545–46 (1949).

This Court has not explicitly decided whether an order denying a motion to seal judicial documents is an appealable final judgment. It has, however, held that "an order

---

[2] Citations to "J.A. __" refer to the Joint Appendix or Supplemental Joint Appendix filed by the parties in this appeal.

[3] Defendant's appeal was postmarked on January 23, 2019. It was thus effectively filed well before the subsequent written order. Because "[a] notice of appeal filed after the court announces a decision, sentence, or order—but before the entry of the judgment or order— is treated as filed on the date of and after the entry," Defendant's appeal is timely. Fed. R. App. P. 4(b)(2).

4

*unsealing* district court documents is an appealable collateral order under *Cohen*." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 574 n.4 (4th Cir. 2004) (emphasis added); *see also Under Seal v. Under Seal*, 326 F.3d 479, 481, 485 (4th Cir. 2003). Additionally, other courts of appeals have concluded that both sealing and unsealing orders are appealable collateral orders. *See, e.g.*, *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 449–50 & n.1 (5th Cir. 2019) (collecting cases).

Moreover, the district court's order here was not, in fact, collateral to an ongoing proceeding. Rather, it was a final, post-judgment order, which significant persuasive authority suggests is appealable. *See United States v. Ray*, 375 F.3d 980, 986 (9th Cir. 2004) ("[T]his court has found post-judgment orders to be 'final' for purposes of § 1291 in a variety of criminal and civil contexts."); *Sportmart, Inc. v. Wolverine World Wide, Inc.*, 601 F.2d 313, 316 (7th Cir. 1979) ("[M]ost post-judgment orders are final decisions within the ambit of 28 U.S.C. § 1291 as long as the district court has completely disposed of the matter."); 15B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3916 (2d ed. 1992 & Supp. 2020) ("[O]nce the original trial proceedings have been completed, final judgment appeal should be available upon conclusion of most post-judgment proceedings."); *see also In re Am. Preferred Prescription, Inc.*, 255 F.3d 87, 92–93 (2d Cir. 2001) ("[O]rders entered post-judgment in ordinary civil litigation . . . are generally appealable, unless they are ministerial or administrative, such as post-judgment discovery orders." (citations and internal quotation marks omitted)); *Palmer v. Wyeth*, No. 97-20291, 1998 WL 857388, at *2 n.9 (5th Cir. Nov. 9, 1998) (unpublished) (per curiam); *Ohntrup v. Firearms Ctr., Inc.*, 802

5

F.2d 676, 678 (3d Cir. 1986) (per curiam); 19 Daniel R. Coquillette et al., Moore's Federal Practice – Civil § 202.13 (3d ed. 2020) (noting that post-judgment proceedings are appealable "to the extent that similar orders in prejudgment proceedings are appealable").

In line with this authority, we have previously explicitly exercised § 1291 jurisdiction over a post-judgment order. *E.g.*, *United States v. $79,650.00 Seized from Bank of Am. Account Ending in 8247*, 650 F.3d 381, 386 (4th Cir.), *as corrected* (June 2, 2011); *cf. In re Mbakpuo*, No. 93-1662, 1995 WL 224050, at *2 (4th Cir. Apr. 17, 1995) (unpublished) (per curiam). And we have often implicitly done so for post-judgment motions related to sealing documents. *E.g.*, *United States v. Morgan*, No. 91-7192, 1992 WL 102573 (4th Cir. May 15, 1992) (unpublished).[4] So have our sister circuits. *E.g.*, *United States v. Bacon*, 950 F.3d 1286, 1289–90 (10th Cir. 2020); *Fair Lab. Practices Assocs. v. Riedel*, 666 F. App'x 209, 211 (3d Cir. 2016).

Admittedly, this Court has stated that an appeal related to a sealing order "would be treated as a petition for mandamus if the party seeking review has standing and has substantially complied with the requirements of [Fed. R. App. P.] 21(a)." *In re Wash. Post Co.*, 807 F.2d 383, 388 (4th Cir. 1986). In fact, this Court has at times referred to mandamus as the "preferred vehicle" for seeking review of sealing-related orders. *Under Seal*, 326 F.3d at 485 n.5.

---

[4] *See also, e.g.*, *Meyers v. Counts*, 784 F. App'x 177, 178 (4th Cir. 2019) (per curiam); *Meyers v. Northam*, 773 F. App'x 143, 144 (4th Cir. 2019) (per curiam); *United States v. Ware*, 627 F. App'x 261 (4th Cir. 2016) (per curiam); *Hause v. AstraZeneca, LP*, 622 F. App'x 254, 255 (4th Cir. 2015) (per curiam).

6

But our preference for mandamus in sealing cases is usually limited to appeals filed by third parties, such as members of the press. *See, e.g.*, *Balt. Sun Co. v. Goetz*, 886 F.2d 60, 63 (4th Cir. 1989) ("Mandamus, not appeal, 'is the preferred method of review for orders restricting *press activity* related to criminal proceedings.'" (emphasis added) (quoting *In re Wash. Post*, 807 F.2d at 388)); *Cent. S.C. Chapter, Soc'y of Prof'l Journalists, Sigma Delta Chi v. Martin*, 556 F.2d 706, 707 (4th Cir. 1977) (noting that mandamus was "the proper remedy" in a case involving press requests for access). *But see Va. Dep't of State Police*, 386 F.3d at 574 n.4 (in a case involving the press, calling mandamus the "preferred vehicle" but nevertheless noting that "an order unsealing district court documents is an appealable collateral order" and therefore not employing mandamus review). And although this Court has occasionally expressed a preference for mandamus without explicitly limiting that preference to cases involving the press, such statements were dicta and do not bind us here. *See, e.g.*, *In re Application of the U.S. for an Order*, 707 F.3d 283, 289 n.3 (4th Cir. 2013) (employing mandamus but noting that the Court would reach the same result if it were to "treat this request for relief as an appealable collateral order"); *Under Seal*, 326 F.3d at 485 & n.5 (referring to mandamus as the "preferred vehicle" but holding that an unsealing order was an appealable collateral order).

Because Defendant is a party to this criminal proceeding, we find it unnecessary to require him to satisfy the difficult standards of mandamus review. *See In re Murphy-Brown, LLC*, 907 F.3d 788, 795 (4th Cir. 2018) (observing that mandamus is a drastic remedy reserved for extraordinary circumstances). We instead exercise jurisdiction pursuant to 28 U.S.C. § 1291 over the district court's final, post-judgment order.

7

## III.

Our analysis on the merits proceeds in two parts. First, we consider whether the public's right to access the district court's order denying Defendant's § 3582 motion arises from the First Amendment or the common law.

The answer to that question determines not only the applicable substantive standard, but also the standard of review. We review de novo a district court's decision concerning access to judicial documents under the First Amendment, but we review a district court's decision concerning the common-law right of access for abuse of discretion. *Va. Dep't of State Police*, 386 F.3d at 575. Because, as discussed below, we assume that the First Amendment applies, our review is de novo.

Second, we consider whether the public's First Amendment right to access the order outweighs Defendant's interests in sealing it. We conclude that Defendant's interests prevail.

## A.

Both the public and the press enjoy a "qualified right of access" to judicial documents filed in criminal proceedings. *Doe*, 749 F.3d at 265. That right serves the public's interest in monitoring court functions and promotes public trust in the judiciary. *Id.* at 266. The right "derives from two independent sources: the common law and the First Amendment." *Va. Dep't of State Police*, 386 F.3d at 575.

Criminal proceedings and related documents are thus presumptively open to the public. *See Press-Enter. Co. v. Superior Court of Cal.*, 478 U.S. 1, 9 (1986) (First Amendment); *Va. Dep't of State Police*, 386 F.3d at 575 (common law). But because a

8

presumption may be overcome, the public's right of access is qualified, not absolute. *See, e.g.*, *Am. Civil Liberties Union v. Holder*, 673 F.3d 245, 252 (4th Cir. 2011).

Moreover, the strength of the right of access varies depending on whether the public's right of access to the document or proceeding derives from the common law or the First Amendment. "[T]he common law does not afford as much substantive protection to the interests of the press and the public as does the First Amendment." *Doe*, 749 F.3d at 265 (quoting *In re Application*, 707 F.3d at 290). Under the common law, there is a rebuttable presumption that the public's right of access applies as to "*all* judicial documents and records." *Id.* at 266 (emphasis added). To overcome that presumption, "a court must find that there is a 'significant countervailing interest' in support of sealing that outweighs the public's interest in openness." *In re Application*, 707 F.3d at 293 (quoting *Under Seal*, 326 F.3d at 486).

The public's right to access documents under the First Amendment is narrower in scope but stronger in force. It applies "only to particular judicial records and documents." *Doe*, 749 F.3d at 266 (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988)). But where the First Amendment applies, a "compelling government interest" must justify denial of access, and closure must be "narrowly tailored to serve that interest." *Id.* (quoting *In re Wash. Post*, 807 F.2d at 390). Accordingly, a court presented with a sealing request must first "determine the source of the right of access with respect

to each document, because only then can it accurately weigh the competing interests at stake." *Id.* (quoting *Va. Dep't of State Police*, 386 F.3d at 576).[5]

The First Amendment's application turns on "two factors: historical tradition and the function of public access in serving important public purposes." *In re Wash. Post*, 807 F.2d at 389. This is commonly known as the "experience and logic" test. *See Press-Enter.*, 478 U.S. at 9. The first factor, historical tradition, asks whether the document or proceeding in question was traditionally open to the public. *In re Wash. Post*, 807 F.2d at 389. The second factor asks whether public access would curb "prosecutorial or judicial misconduct" and further "the public's interest in understanding the criminal justice system." *Id.*

Our precedent largely supports applying the public's First Amendment right of access to the district court's order. We have held that the First Amendment right applies to sentencings and plea hearings, as well as to documents filed in connection with those proceedings. *Id.* at 390. And, in the context of a summary judgment motion, we have concluded that the First Amendment right extends to a judicial opinion when the underlying materials and evidence forming the substance of an opinion are already covered. *Doe*, 749 F.3d at 267–68. Accordingly, the document at issue here—a court order denying a sentence

---

[5] Here, the district court made no attempt to determine the source of the public's right to access its order denying Defendant's § 3582 motion. Instead, the court summarily concluded that Defendant had not overcome the presumption of public access. The district court cited this Court's opinion in *Doe*, 749 F.3d 246. But because that opinion concerned both the First Amendment and the common law, a passing citation to it is no substitute for the requisite analysis. Absent consideration of whether the public's right of access derived from the First Amendment or the common law, the district court could not have "accurately weigh[ed] the competing interests at stake." *Id.* at 266 (quoting *Va. Dep't of State Police*, 386 F.3d at 576).

reduction—is likely encompassed by the First Amendment right of access. *But see United States v. Harris*, 890 F.3d 480, 491–92 (4th Cir. 2018) (applying the common law right of access in a case regarding access to a sentencing memorandum).

In any event, we need not, and do not, conclusively decide this issue. *See Holder*, 673 F.3d at 252. Because Defendant's compelling interests in sealing the district court's order outweigh the public's interest in accessing it under either the common law standard or the more rigorous First Amendment standard, we assume without deciding that the First Amendment applies. *See id.* (assuming without deciding that the First Amendment right of access extended to qui tam complaints and related docket sheets).

B.

Even assuming the First Amendment right of access applies, however, "[t]he mere existence of" such a right "does not entitle the press and public to access in every case." *In re Wash. Post*, 807 F.2d at 390; *see also Holder*, 673 F.3d at 252. Under the First Amendment, the district court's order denying Defendant's motion for a sentence reduction should be sealed "only if (1) closure serves a compelling interest; (2) there is a 'substantial probability' that, in the absence of closure, that compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect that compelling interest." *In re Wash. Post*, 807 F.2d at 392 (quoting *Press-Enter.*, 478 U.S. at 14); *see also id.* at 393 n.9 ("Because we hold that the First Amendment right of access extends to documents as well as to hearings, requests for the sealing or unsealing of documents must also be evaluated under these constitutional tests.").

11

Additionally, a court must base its decision on "specific factual findings" rather than "conclusory assertions alone." *Id.* at 392. Here, the district court's cursory order neither engaged in the required three-part analysis nor based its decision on specific factual findings. In fact, the district court made no specific findings at all.

We conclude that the district court erred. Defendant's circumstances required the court to seal its order referring to his cooperation because the order placed him in danger and there were no narrower alternatives to sealing. In evaluating the risks Defendant faces, we take judicial notice[6] of the findings contained in a 2016 report by the Committee on Court Administration and Case Management of the Judicial Conference of the United States ("CACM Report"), which evaluated the need to protect government cooperators in federal prisons.[7] We also consider the Eastern District of North Carolina's standing order requiring the automatic sealing of motions related to a defendant's substantial assistance. *See* United States District Court, Eastern District of North Carolina, Standing Order No. 09-SO-02 (Feb. 12, 2010) ("E.D.N.C. Standing Order").[8]

---

[6] We may take judicial notice of facts that are generally known, even where the district court declined to do so. *E.g.*, *United States v. Lavender*, 602 F.2d 639, 641 (4th Cir. 1979). Moreover, we may take judicial notice of governmental reports. *United States v. Cecil*, 836 F.2d 1431, 1452 (4th Cir. 1988).

[7] *See* Memorandum from the Comm. on Court Admin. & Case Mgmt. of the Judicial Conference of the U.S. (June 30, 2016), *in* Meeting Agenda Book for the Advisory Comm. on Criminal Rules 243–51 (Sept. 19, 2016), http://www.uscourts.gov/sites/default/files/2016-09-criminal-agenda_book_0.pdf.

[8] Available at http://www.nced.uscourts.gov/data/StandingOrders/09-SO-2.pdf.

1.

Defendant argues that sealing the district court's order would serve the compelling interest of protecting his safety.[9] "Courts have recognized that an interest in protecting the physical and psychological well-being of individuals related to the litigation . . . may justify restricting access." *Harris*, 890 F.3d at 492. And "as a general rule, the need to protect the well-being of" a defendant "is even more elevated if judicial records suggest that the defendant may have cooperated with law enforcement." *Id.*

Although *Harris* evaluated the public's right of access under the common law, not the First Amendment, the interest in protecting cooperators from harm is no less compelling in the First Amendment context. We are aware of no authority stating otherwise. To the contrary, several of our sister circuits have held that protecting cooperating inmates serves a compelling interest under the First Amendment. *See United States v. Doe*, 870 F.3d 991, 998 (9th Cir. 2017); *United States v. Doe*, 63 F.3d 121, 128

---

[9] Defendant also argues that sealing the order would preserve the integrity of ongoing investigations and would protect his family. Although we are in "complete agreement with the general principle" that protecting ongoing investigations serves a compelling interest, the party moving to seal must nonetheless provide "specific underlying reasons" describing "how the integrity of the investigation reasonably could be affected by the release of such information." *Va. Dep't of State Police*, 386 F.3d at 579. Because Defendant has failed to do so here, we cannot find that this is a compelling interest in his case. Moreover, protecting family members is certainly a compelling interest, made all the more compelling when a defendant cooperated with the government. *See Harris*, 890 F.3d at 492. Although Defendant did not raise the risk to his family before the district court, the Government did not make a waiver argument, and we could excuse that defect. *See Manning v. Caldwell*, 930 F.3d 264, 271 (4th Cir. 2019). But because Defendant provides no further details about the risk to his family, the E.D.N.C. Standing Order does not elaborate on such a risk, and we otherwise find sealing to be necessary, we do not comment further on that potential compelling interest.

13

(2d Cir. 1995); *United States v. Corbitt*, 879 F.2d 224, 235 (7th Cir. 1989); *cf. Detroit Free Press v. Ashcroft*, 303 F.3d 681, 705–06 (6th Cir. 2002) (holding that "compelling interests sufficient to justify closure" existed where "[d]ivulging the detainees' identities may deter them from cooperating" in a terrorist investigation because "[t]errorist groups could subject these individuals or their families to intimidation or harm"); *Wash. Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir.), *as amended* (June 14, 1991) (leaving open the possibility that "evidence that the release of a plea agreement may threaten . . . the safety of the defendant . . . may well be sufficient to justify sealing a plea agreement in a different case").[10]

Moreover, harm to cooperators does not only affect those individuals. Rather, "[t]he problem threatens public safety" and "interferes with the gathering of evidence, the presentation of witnesses, and the sentencing and incarceration of cooperating defendants, . . . pos[ing] a substantial threat to the underpinnings of the criminal justice system as a whole." CACM Report at 7. Therefore, the Court Administration and Case Management Committee of the Judicial Conference concluded "that there is a compelling government interest in addressing these issues." *Id.*

For its part, the government's arguments against sealing focus on the likelihood of harm to Defendant, not whether protecting cooperators is a compelling interest in the

---

[10] Whether an interest is compelling may sometimes blend into the substantial-probability-of-harm prong. The Ninth Circuit "address[ed] together the first two prongs" of the analysis because it found "significant overlap" as to how those prongs "pertain[ed] to the facts of" its case. *Doe*, 870 F.3d at 998. We find it unnecessary to do so here given that our precedent independently supports finding that protecting cooperators serves a compelling interest. *See Harris*, 890 F.3d at 492.

abstract. In these circumstances, we have no difficulty concluding that protecting cooperators from harm is a compelling interest that can justify sealing.

2.

Where a compelling interest exists, sealing is nevertheless inappropriate unless a court determines there is a "substantial probability" the interest will be harmed absent sealing. *In re Wash. Post*, 807 F.2d at 392. In his pro se motion to seal, Defendant asserted that the district court's order referring to his cooperation established an ongoing, significant risk to his safety. He requested sealing before he was physically harmed.

Of course, such conclusory statements cannot alone establish a substantial probability of harm. *Id.* But the record demonstrates that Defendant faces a heightened risk.

To start, Defendant was involved with, and provided information about, members of an interstate drug-trafficking organization and individuals committing home invasion robberies. The information he provided was used in multiple investigations, as well as in a federal sentencing. And Defendant spent a decade "[r]obbing high level drug dealers"— individuals who, according to the district court, are more likely to "put a hit out on you" than to "call the police" after a robbery. J.A. 44, 47.

Furthermore, Defendant notes that the district court's reference to his cooperation poses a threat to him because the reference was not to a mere willingness to cooperate or to the fact of cooperation divorced from whether the court found it to be substantial. Rather, in context, it is clear that Defendant (1) cooperated, (2) provided useful information, and therefore (3) was rewarded for it with a reduced sentence—one significantly below his original Guidelines range.

15

To be sure, the record does not reveal any direct threats to Defendant. But "direct threats are not 'a strict condition precedent to a district court's granting of a closure motion.'" *Doe*, 870 F.3d at 999 (quoting *Doe*, 63 F.3d at 130).

The Ninth Circuit's *Doe* decision provides a useful comparator because, although the record in that case did contain an explicit threat to the defendant's family, there were no such threats made to the defendant himself. *Id.* Rather, like here, the record demonstrated "why the risk to [the defendant] was heightened." *Id.* at 998 (internal quotation marks omitted). In its substantial assistance memorandum, the government explained that the defendant was involved with an international drug cartel before he lost more than half a million dollars' worth of methamphetamine. *Id.* He had smuggled drugs across the U.S.-Mexico border and distributed them across Southern California. *Id.* Like Defendant, the defendant in that case began cooperating with the government soon after his arrest, implicating others who were also incarcerated. *Id.* The Ninth Circuit concluded that a direct threat was not necessary to establish a substantial probability of harm where the record clearly revealed a heightened risk. *See id.* at 999. We agree with that approach.

The E.D.N.C. Standing Order and the CACM Report add credibility to Defendant's fears. The Standing Order recognized that longstanding "concerns about the safety of cooperating defendants . . . have been exacerbated by the subsequent development of PACER and the growth of the internet." E.D.N.C. Standing Order at 2. Indeed, the Eastern District of North Carolina had received reports of "assaults, even torture, of [cooperating] defendants by fellow inmates." *Id.* at 1. And the Eastern District noted that the problem was not merely made worse by the fact that inmates could now readily search fellow

16

inmates' dockets using PACER or online legal research tools. Rather, "such information is often posted on internet web sites . . . and on social networking sites . . . for the apparent purpose of encouraging reprisals against defendants who cooperate with authorities." *Id.* Similarly, "[t]he Court has reviewed a video posted on the internet displaying the cooperation provisions of defendants' plea agreements and discussing substantial assistance motions, apparently aimed at discouraging the cooperators from testifying." *Id.*

In 2010, therefore, the Eastern District adopted the Standing Order. The Standing Order requires automatic sealing of substantial assistance motions for an extendable period of two years. *See id.* at 3–4. It also applies to "any responses to substantial assistance motions, replies, orders granting or denying such motions, and any pleadings and orders relating to the continuance of a hearing on a pending Rule 35 motion." *Id.* at 3 n.1.[11] The Eastern District concluded these measures were necessary "to preserve the 'higher value' of preventing interference with the due administration of justice that results from reprisals against witnesses." *Id.* at 4 (citation omitted) (quoting *In re Wash. Post*, 807 F.2d at 390).

The Eastern District is by no means alone in taking steps to protect cooperators. *Id.* at 2 (discussing other districts' policies). As of June 2016, more than one-third of federal district courts had "adopted local rules or standing orders to make all criminal defendants appear identical in the record to obscure cooperation information." CACM Report at 3 n.3.

---

[11] The rule is not, however, absolute. The Standing Order provides exceptions for where the government is under a "case-related disclosure obligation" in another case or where disclosure "is necessary to protect [the] . . . legal interests or safety" of "the defendant whose assistance is the subject of the motion." *Id.* at 3. In those cases, the government, defendant, or defense counsel may disclose the sealed document "without seeking a court order." *Id.*

The CACM Report urged more courts to consider adopting methods to protect cooperators. *See id.* at 1, 3.

The conclusions of the CACM Report provide additional compelling data regarding the risks to Defendant and other cooperators. We agree with the Ninth Circuit's conclusion that the Report "sheds considerable light on the dangers faced by those who agree to cooperate with government investigations." 870 F.3d at 999.

First, the CACM Report explains that "[r]emote electronic access [has] dramatically increased the potential for illicit use of case information regarding cooperators." CACM Report at 1–2. Indeed, the Report notes that "it is largely for this reason that the Judicial Conference initially delayed public electronic access to criminal case files." *Id.* at 2.

Next, the CACM Report presents alarming findings, noting that "district judge [survey] respondents reported 571 instances of harms or threats—physical or economic— to defendants and witnesses between the spring of 2012 and the spring of 2015, including 31 murders of defendant cooperators." *Id.* Moreover, it reported "363 instances in which court records were known by judges to [have been] used in the identification of cooperators" and acknowledged "a particular problem in our prisons, where new inmates are routinely required by other inmates to produce dockets or case documents in order to prove whether or not they cooperated. If the new inmates refuse to produce the documents, they are punished." *Id.* The Report noted the Committee's belief that all of this was indicative of "a systemic problem of court records being used in the mistreatment of cooperators." *Id.* And "[b]ecause criminal case dockets are . . . compared in order to identify cooperators, every criminal case is implicated." *Id.* at 3.

18

The CACM Report recognized judges' duty "to vigilantly safeguard the public's right to access court documents and proceedings pursuant to the First Amendment and under common law," but noted that "there are many well-established restrictions on access to criminal case information that address compelling government interests," such as those limiting access to presentence investigation reports. *Id.* at 4 & n.7. The Report concluded that "the harms to individuals and the administration of criminal justice in this instance are so significant and ubiquitous" that action was necessary and justified, "consistent with each court's duty to exercise 'supervisory power over its own records and files.'" *Id.* at 4 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) ("It is uncontested . . . that the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes.")).

The CACM Report thus issued recommendations regarding how courts handle plea agreements, sentencing memoranda, transcripts of plea hearings and sentencings, Rule 35 motions, presentence reports, and judicial opinions involving cooperators—the last of which, "where reasonably practicable, should avoid discussing or making any reference to the fact of a defendant's . . . cooperation." *Id.* at 9; *see also id.* at 8–9.

In sum, the facts of Defendant's case, the background facts found by the Eastern District and the CACM Report, and the analysis by the Ninth Circuit in similar circumstances in *Doe* lead us to conclude that Defendant faces a substantial risk of harm in the absence of sealing. *See Doe*, 870 F.3d at 999.

Seeking to overcome these facts, the government notes that Defendant's sentencing transcript—which has been available on the docket since September 2014—discusses his cooperation.[12] Similarly, the district court's text order noted that "[t]he court's order has been public since July 30, 2018," implying that Defendant's decision not to move to seal it until November of that year suggested there was no real risk of harm. J.A. 14.[13] The government argues that the fact of Defendant's cooperation "has therefore lost its secret character." Response Br. at 12. (citing *Va. Dep't of State Police*, 386 F.3d at 579).

But the government's cited authority is inapposite. In *Virginia Department of State Police*, a police department sought to maintain a seal on certain records disclosing the identity of a suspect in a brutal rape and murder—but it failed to move to keep under seal other documents containing the same information. 386 F.3d at 572–73. The suspect's identity became "a matter of public record" and was "extensively reported in the media." *Id.* at 573; *see id.* at 578. The district court thus found the police department's arguments unpersuasive, and it unsealed the disputed records. *Id.* at 573. We affirmed. *Id.* at 580.

Unlike *Virginia Department of State Police*, here there is no reason to believe that Defendant's cooperation is "already a matter of public record." *Id.* at 573. Rather, the Ninth Circuit's decision in *Doe* is a more apt comparison. There, the Ninth Circuit rejected the district court's conclusion that "the § 5K1.1 departure 'cat' is typically out of the bag at a defendant's sentencing." *Doe*, 870 F.3d at 995. The Ninth Circuit noted that "no members

---

[12] The government also notes that certain of Defendant's pro se filings make reference to his cooperation. We will not hold against Defendant that, proceeding pro se, he did not move to seal his own filings.

[13] However, the district court did not mention this fact in its written order.

of the media expressed interest in Doe's sentencing, and no one has ever publicly sought access to Doe's court file or proceedings." *Id.* at 996. Similarly, here, although the fact of Defendant's cooperation has technically been available to the public, there is no suggestion in the record that it has been reported in the media.

The government also raises practical considerations. It argues that ruling in Defendant's favor would make "every document in the entire federal criminal justice system mentioning [§ 5K1.1] . . . subject to be sealed." Response Br. at 10. Further, "because [§ 5K1.1] motions are so common place," that would cover "a tremendous number of documents" and require "a huge undertaking" for district courts. *Id.*

We are sensitive to the government's concerns, but we find them unpersuasive. *Cf. Va. Dep't of State Police*, 386 F.3d at 574 (rejecting the idea that "the district court's decision to unseal the documents will have a dramatic effect beyond this case" because "the issue is actually quite narrow and . . . its resolution is dictated by well-established precedent and the unique circumstances of this case"). To the extent that automatic sealing applies to a specific document, the Eastern District has already concluded, after weighing such arguments, that "[c]ase-by-case review would not work." E.D.N.C. Standing Order at 4.[14] Where automatic sealing does not apply to a specific category of filings, courts have

_____

[14] No party has raised a facial challenge to the Standing Order, and accordingly its validity is not before us. "But nothing in our precedent prevents district courts from adopting some variation of the practices recommended by the [CACM] Report, as long as district courts decide motions to seal or redact on a case-by-case basis." *Doe*, 870 F.3d at 1002; *see also Bacon*, 950 F.3d at 1295 & n.7. As noted, the Standing Order already allows for disclosure of sealed documents without a court order in certain circumstances. E.D.N.C. Standing Order at 3. Moreover, where a party raises a question as to a sealing decision, the court must make a determination considering the specific facts of the case. The court may, of

21

no choice but to engage in the analysis discussed herein upon motion by the defendant or another interested party. But protecting cooperating defendants in federal custody is in the interest of the government as well as the defendant. *E.g.*, CACM Report at 7. If the government finds it burdensome to litigate every sealing motion filed by a defendant, it need not do so.

3.

Finally, although Defendant has established a substantial probability that a compelling interest will be harmed absent sealing of the district court's order, he must also show that there are no adequate alternatives to sealing in this case. *In re Wash. Post*, 807 F.2d at 392. To that end, Defendant contends that sealing the order, rather than redacting it, "is the narrowest means for serving the interests at stake" in his appeal. Opening Br. at 12. He argues that redacting references to § 5K1.1 would only cause other inmates to conclude that the removed material involved cooperation. Likewise, the Eastern District has found that alternatives to automatic sealing "would not work" to protect inmates who have provided substantial assistance to the government. E.D.N.C. Standing Order at 4.

Common sense confirms this conclusion. Although this Court has used redactions to protect the identities of a defendant's family members, *e.g.*, *Harris*, 890 F.3d at 492, redaction cannot protect Defendant himself because redacting the order would merely "flag the filings in his case. The publicly available and remotely accessible filings would immediately look different from the filings in non-cooperators' cases." *Doe*, 870 F.3d at

course, take into consideration the background facts that led to the adoption of any relevant standing order in the first place.

1001. For that reason, the CACM Report recommends that "courts restructure their practices so that documents or transcripts that typically contain cooperation information" are automatically placed in a sealed supplement. CACM Report at 3. We agree with Defendant that sealing the order at issue is the narrowest means of protecting the compelling interest in this case.

## IV.

Because sealing the order referring to Defendant's substantial assistance is necessary to protect Defendant from harm, we reverse the district court's decision denying his motion to seal. On remand, the district court shall seal its order denying Defendant's § 3582 motion for at least two years from the date the court enters its sealing order.[15]

Of course, our opinion does not require other districts to implement the sort of automatic sealing procedures recommended by the CACM Report or adopted by the Eastern District of North Carolina. Courts can and should continue to consider possible alternative responses to the violence cooperators and their families face in federal prisons and elsewhere. But where, as here, the risks facing cooperators have already led a district to take blanket measures, courts within the district should act consistently with the concerns underlying that policy.

*REVERSED AND REMANDED*

---

[15] We recognize that, as a general matter, it is preferable for district courts to make sealing determinations in the first instance. *See Va. Dep't of State Police*, 386 F.3d at 581. However, given the ongoing safety issues at stake, we find it appropriate in this instance to remand with directions. *See Doe*, 870 F.3d at 1002.

RICHARDSON, Circuit Judge, dissenting:

The public enjoys a weighty right of access to the criminal courts that is secured by the First Amendment and the common-law tradition. *See Doe v. Public Citizen*, 749 F.3d 246, 265–69 (4th Cir. 2014); *see also Richmond Newspapers, Inc. v. Virginia*, 488 U.S. 555, 563–81 (1980) (plurality opinion) (Burger, J.). Even so, I wholeheartedly agree with the majority that the protection of defendants and their families—not to mention the need to safeguard ongoing investigations—generally presents a compelling interest that should, in most cases, overcome the public's right of access and permit sealing information related to a defendant's cooperation with law enforcement. But that interest alone cannot justify a categorical rule that demands sealing without regard to the specifics of a given case. *See Press-Enterprise Co. v. Superior Court of California for Riverside County*, 464 U.S. 501, 509 (1984); *see also In re Knight Publishing Co.*, 743 F.2d 231, 234–35 (4th Cir. 1984).[1] And here, the specifics lead me to conclude that the district court appropriately declined to seal an order that referenced the Defendant's cooperation.

Whether we focus on when the exercise of the inherent judicial Power (or something else) *requires* sealing or when the First Amendment and the common law merely *permit* it, the Defendant's motion is fatally underinclusive—failing to satisfy a requirement shared

---

[1] The district court's standing order governing *motions* addressing cooperation is not at issue here. So while a categorical rule barring consideration of a case's specifics might well raise concerns, *compare Globe Newspaper Co. v. Superior Ct. for Norfolk Cty.*, 457 U.S. 596, 607–08 (1982) (state statute that categorically required closed courtrooms during minor victim testimony failed to consider the circumstances of a particular case), *with Am. Civ. Liberties Union v. Holder*, 673 F.3d 245, 254 (4th Cir. 2011) (initial 60-day sealing period for False Claim Act claims permissible), we need not address them here.

24

by the varied points in our somewhat Delphic doctrinal constellation.[2] That is because the relief it seeks fails to protect whatever "secret characteristic" of the information remains after all these years. *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 579 (4th Cir. 2004) (internal quotations omitted) (First Amendment); *see In re Knight Publishing Co.*, 743 F.2d at 235 (common law). Even after today's order granting the motion (which seals one document for two years in the middle of the Defendant's long prison term), the Defendant's cooperation remains detailed in other publicly available court records. Indeed, to find a substantial probability of harm absent sealing, the majority itself—with a straight face—relies on that same publicly available information to bolster the Defendant's mere "conclusory statements." Majority Op. 15; *see also id.* at 3. That information, more specific than the passing reference at issue today, has long been accessible to the public and will remain so. *Compare United States v. Doe*, 870 F.3d 991, 994 (9th Cir. 2017) (addressing motion "to seal all documents related to, or disclosing the existence of," the defendant's cooperation), *with* Majority Op. 23 (leaving documents referencing the cooperation in the public domain).

And so, with great respect for the Majority's desire to guard against the real and substantial harms that may result from disclosing law-enforcement cooperation, I would affirm the district court based on the specifics of this case.

---

[2] This underinclusiveness obviates the need to determine the floors and ceilings presented by the common law, the First Amendment, and the exercise of the judicial Power. And it permits us to avoid the more complex twists and turns that are raised when we are asked to review—instead of the conventional decision to grant a motion to seal (with a challenge asserting a First Amendment and common law right of access)—a *denial* of a motion to seal (with a challenge asserting, apparently, some other type of right).

25